B"H

### UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

### Case No. 1:18-CV-01339-CRC

JAMES PRICE,

     Plaintiff,

v.

UNITED STATES
DEPARTMENT OF JUSTICE,

     Defendant.

_____/

### PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE LEAVE TO AMEND COMPLAINT, AND SECOND AMENDED COMPLAINT

    **COMES NOW,** James Price ("the Plaintiff"), and files this, his motion for an extension of time to file leave to amend the complaint, and an original copy of the proposed Second Amended Complaint, pursuant to this Court's July 31, 2018 Order, and LCvR 7(i).

## I.  EXTENSION OF TIME IS NECESSARY AND PROPER FOR AGENCY NOTICE

    1.   In this Court's July 31, 2018 Order, the Court trimmed the Plaintiff's proposed deadline by thirty (30) days setting **August 31, 2018** as the deadline for the Plaintiff to file his amended complaint. The Plaintiff's proposed timeline was based on several factors but primarily on three elements: (1) time for the Plaintiff to draft and serve the agencies the required notice of non-compliance; (2) adequate time for the agency heads (the Office of the United States Attorney General) and the United States

1

RECEIVED
Mail Room

AUG 1 3 2018

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Archivist, to receive, process and respond to the notice; and (3) the Defendant's willingness to engage in substantive communications on the issues.

2. The August deadline Ordered by this Court does not allow the agencies sufficient time to respond to the notice of non-compliance with Federal Records Act ("FRA"). In an effort to put the scope of the Defendant's FRA violations in perspective, as counsel for the Defendant highlighted in her status report, the agency has **not** been "routinely" preserving many of the required records that were created by or provided to, its grant-funded "operational" entities. These operational entities include all National ICAC Task Force grant recipients that provide or engage in research, training or enforcement operations, and affiliate or contract operators, e.g., the National Center for Missing and Exploited Children and the Child Rescue Coalition.

3. The subject records include all record types as defined under Title 44 U.S.C. §§ 2101 et seq., §§ 2901 et seq., §§ 3101 et seq., §§ 3301 et seq., and 36 C.F.R., Chapter XII, Subchapter B, Parts 1220-1222 [36 C.F.R. §§ 1220-1222]. The subject records represent the records underpinning significant public policy decisions and operational decisions by the Defendant in directing national enforcement operations. The subject records of the proposed amendment to the complaint represent the "receipts" for the more than a **quarter billion dollars** in publicly funded grants that the Office of Juvenile Justice and Delinquency Prevention ("OJJDP") has dispursed since 2008. See Exhibit "A".

4.  In Fiscal Year 2017 alone, the OJJDP touted its more than twenty-seven (27) million dollars in direct and grant-funded expenditures that resulted in more than 66,000 alleged investigations and the **arrest** of more than 10,300 citizens.  The Defendant's admission that it "routinely" failed to collect **ANY** of the detailed information, records, documents, or data related to the expenditure of millions taxpayer dollars every year is a staggering violation of the FRA.  Additionally, the agency failed to collect or preserve any records from the single largest contract provider of alleged "criminal investigative leads" to the National ICAC Task Force Program, the Child Rescue Coalition, Inc. ("CRC").  The CRC's public website alleged to have produced more than **12 billion** criminal investigative leads for the National ICAC Task Force Program.  See https://childrescuecoalition.org/the-solution (last visited January 27, 2017).  See Exhibit "B".

5.  The Defendant admitted in its Status Report [ECF No. 33:¶3], that it "does not routinely collect" records sent by law enforcement agents of the National ICAC Task Force, including those sent to the private, non-profit, National Center for Missing and Exploited Children ("NCMEC").  That stunning admission included millions of records removed in violation of the FRA in this case.  In fact, all the records including those cited by the Defendant, were removed from federal agencies to the NCMEC, CRC, and other non-governmental entities, in violation of the FRA.

6.  In response to a records request filed by the Plaintiff, Margaret M. Klein, Litigation Counsel for the NCMEC, stated the NCMEC is a **private** organization and therefore not subject to FOIA requests, or any other federal or state requests for records.  Thus, the actions of the Defendant constitute a direct, knowing, and **admitted** violation of the statutes, regulations, and

policies that have deprived the public, and those affected by the government's actions, of their rights under the law. See Exhibit "C".

7. The FRA requires the Archivist to notify the agency head of the violation and to notify the Attorney General to begin enforcement proceedings to compel the recalcitrant agency's compliance with the statutes. In this case, the Attorney General is **BOTH** the head of the offending agency, and charged with launching enforcement proceedings against **his own agency.** This is particularly noteworthy where the Attorney General was also required to collect the **same** subject records under 34 U.S.C. §§ 11291 et seq., as the basis of annual reporting requirements to Congress. The Department of Justice's deliberate malfeasance in its failure to comply with the statutes, regulations, and policies is of great public concern where the subject records were the **justification** for continued and increased program appropriations.

8. The Defendant falsely asserted the complaint was limited to records related to the Plaintiff's case. In so doing, the Defendant blatantly misstated the facts of this case. The Court's Order [ECF No. 26] transferring this case was based in part on the Plaintiff's notice of numerous cases across the federal judiciary affected by the facts underlying the amended claims. See Affidavit of James Price filed separately at ECF No. ___.

## II.  PROPOSED RESET OF TIMELINES

9. Due to Plaintiff's requirement to file and receive pleadings conventionally there is a natural 7-to-10 day delay in his receipt of service in this case. While this is a minor logistical matter, it adds a manageable overhead to the nature of the proceedings; noting that as of date of this

motion, the Plaintiff has **not** received service of this Court's Order dated July 31, 2018.

10. On August 9, 2018, the Plaintiff filed a "Joint Notice" to both the Attorney General (as the agency head) and the Archivist **via email** and also forwarded copies via Certified United States Mail.  Additionally, the Plaintiff provided a courtesy copy of the Joint Notice to counsel for the Defendant **via email**.  See Exhibit "D".

11. The Plaintiff asserts that due to the scope of the Defendant's violations (millions of records), and the length of the on-going violations (more than 10 years), both the Defendant and the Archivist will need thirty (30) to forty-five (45) days to assess the multiple issues encompassed by this matter, formulate a remediation strategy, and respond to the Plaintiff.  Upon the agencies' responses, but in **not more than ninety (90) days**, the Plaintiff will file his motion for leave and his proposed Second Amended Complaint, incorporating the Defendant's and Archivist's responses in the record of this case.

### III.   OTHER RESPONSIVE MATTERS

12. It has come to the attention of the parties that some of the subject records of this case involve CLASSIFIED information.  Pursuant to 18 U.S.C. App. 3 § 5, the Plaintiff will file the required Classified Informaiton Procedures Act ("CIPA") notice, and motion for hearing.  The Plaintiff notifed counsel for the Defendant of the CIPA matter [See Exhibit "E"], and will file the initial motion as required.  Thus, while the agencies conduct the necessary investigations and prepare responses under FRA, the parties can

brief this Court on the CIPA matter, and work to narrow the remaining issues through negotiated production.

## IV.  NOTICE OF PRE-FILING CONFERENCE

13. In accordance with LCvR 7(m), the undersigned has made repeated "good faith" attempts to confer with the Defendant via telephone and email. See Exhibit "E".  The Defendant has refused to engage in any communications or discussions with the Plaintiff.

## V.  CONCLUSION

14. The circumstances of this case, combined with the statutory requirements and regulations of the Federal Records Act, necessitated that the Plaintiff notify both the Defendant and the Archivist of the Defendant agency's non-compliance with the FRA.  The Archivist must additionally, notify the Defendant (in his investigative/enforcement capacity) and report to Congress.  Both the Defendant and the Archivist must also provide responses to the Plaintiff.  Due to the scope of the Defenadnt's violations, and the Defendant's dual role as both offender and enforcer of the statutes, this process will likely require more than thirty (30) days.  Moreover, in light of the decisions of the district court and the D.C. Circuit on a similar FRA issue, the Plaintiff asserts the interlocutory CIPA issue, coupled with "fair notice" time for the agencies to respond, merits a brief delay in these proceedings.  See Judicial Watch, et al., v. John R. Kerry, et at., 844 F.3d 952 (D.C. Cir. 2016).

**WHEREFORE,** in view of the foregoing points and citations of authority, the Plaintiff respectfully moves this Court for entry of an Order **GRANTING** the Motion for Extension of Time, and to reset the filing deadlines accordingly.

Respectfully Submitted,

James Price
Plaintiff
USM No. 98922004
Federal Correctional Institution
P.O. Box 779800
Miami, Florida 33177-9800
Tel.: 305-259-2150/2268
Email: PriceJamesE@Outlook.com

# EXHIBIT

# A



U.S. Department of Justice
**Office of Justice Programs**

**OJJDP** Office of Juvenile Justice
and Delinquency Prevention

*Enhancing safety. Ensuring accountability. Empowering youth.*

Home > Programs > Program Summary                                              | Search | FAQs | Contact Us

- About OJJDP
- E-News
- Topics
- Funding
- Programs
  - Program Search
  - Training and Technical Assistance
  - Model Programs Guide
  - OJJDP in Focus
  - Programs and Initiatives
- State Contacts
- Publications
- Research and Statistics
- Events
- Tools
- Home

# Program Summary

## Internet Crimes Against Children Task Force Program

Overview      Programs and Funding      Research and Evaluation      TTA      Contacts      Resources      FAQs

### Overview                                                                                                                  Top

The Internet Crimes Against Children Task Force Program (ICAC program) helps state and local law enforcement agencies develop an effective response to technology-facilitated child sexual exploitation and Internet crimes against children. This help encompasses forensic and investigative components, training and technical assistance, victim services, and community education.

The program was developed in response to the increasing number of children and teenagers using the Internet, the proliferation of child sexual abuse images available electronically, and heightened online activity by predators seeking unsupervised contact with potential underage victims. OJJDP created the ICAC Task Force Program under the authority of the fiscal year (FY) 1998 Justice Appropriations Act, Public Law 105–119. The Providing Resources, Officers, and Technology to Eradicate Cyber Threats to Our Children Act ("the PROTECT Act") of 2008, (P.L. 110–401, codified at 42 USC 17601, et seq.), authorized the ICAC program through FY 2013. On November 2, 2017, the Providing Resources, Officers, and Technology to Eradicate Cyber Threats to (PROTECT) Our Children Act of 2017 was signed into law, reauthorizing the ICAC Task Force Program through FY 2022.

The ICAC program is a national network of 61 coordinated task forces representing over 4,500 federal, state, and local law enforcement and prosecutorial agencies. These agencies are engaged in both proactive and reactive investigations, forensic investigations, and criminal prosecutions. By helping state and local agencies to develop effective, sustainable responses to online child victimization – including responses to the online sharing of child sexual abuse images, OJJDP has increased the capacity of thousands of communities across the country to combat Internet crimes against children. For information on ICAC Task Forces by state, please visit **www.icactaskforce.org**.

- Since the ICAC program's inception in 1998, more than 629,400 law enforcement officers, prosecutors, and other professionals have been trained on techniques to investigative and prosecute ICAC related cases.
- Since 1998, ICAC Task Forces have reviewed more than 775,000 complaints of alleged child sexual victimization resulting in the arrest of more than 83,000 individuals.

In 2017, ICAC task force programs conducted more than 66,000 investigations and 86,400 forensic exams. These efforts resulted in the arrests of more than 10,300 individuals. Additionally, the ICAC program trained over 38,600 law enforcement personnel, over 2,400 prosecutors, and more than 12,400 other professionals working in the ICAC field.

### Programs and Funding                                                                                          Top

In FY 2017, funding for the ICAC program totaled $27,600,000 to support ICAC task forces and training and technical assistance. ICAC Task Force Program funding is supported under the Missing and Exploited Children appropriation included in the Department of Justice fiscal year appropriation.

#### Funding History

- FY 2003: $12.4 million
- FY 2004: $12.3 million
- FY 2005: $13.3 million
- FY 2006: $14.3 million
- FY 2007: $14.3 million
- FY 2008: $16.9 million
- FY 2009: $75 million
- FY 2010: $30 million
- FY 2011: $30 million
- FY 2012: $25.7 million
- FY 2013: $25.050 million
- FY 2014: $27 million
- FY 2015: $27 million
- FY 2016: $27.6 million

- FY 2017: $27.6 million

## Training and Technical Assistance Top

The ICAC Training and Technical Assistance Program was established to provide ICAC task forces and their affiliates with the training and technical assistance they need to conduct effective investigations and prosecutions. Training providers include the following:

- **SEARCH, the National Consortium for Justice Information and Statistics,** provides training related to social networking sites, peer to peer file sharing, wireless networks, and cell phone technology for law enforcement, prosecutors and allied professionals.

  Contact: Timothy Lott, Director, High-Tech Crime Training Services
  SEARCH, The National Consortium for Justice Information and Statistics
  1900 Point West Way, Suite 275
  Sacramento, CA 95815
  916-550-9524
  **tim@search.org**

- The **National White Collar Crime Center** provides training for law enforcement, prosecutors, and other stakeholders in the ICAC program to improve investigative, prosecutorial, and forensic capabilities; create and distribute guidelines, best practices, and investigative methodologies; and coordinate meetings with grantees and practitioners.

  Contact: Tyler Wotring
  Supervisor, Cyber Crime Section
  National White Collar Crime Center (NW3C)
  5000 NASA Blvd., Suite 2400
  Fairmont, WV 26554
  877-628-7674 ext. 2202
  **twotring@nw3c.org**

- The **Innocent Justice Foundation** provides a comprehensive mental health and wellness program for ICAC task forces to address negative effects and trauma for individuals exposed to child sexual abuse images through their work.

  Contact: Beth Medina, CEO
  The Innocent Justice Foundation
  2240 Encinitas Blvd., Suite D4
  Encinitas, CA 92024
  **beth@innocentjustice.org**
  760-944-1640

- Fox Valley Technical College (FVTC) provides training focused on investigative techniques and best practices for undercover operations to combat Internet crimes against children and site-specific **technical assistance** to ICAC Task Forces.

  Contact: Leila Harrington
  Program Administrator, ICAC Training & Technical Assistance Program
  National Criminal Justice Training Center of Fox Valley Technical College
  UNH, 10 West Edge Dr, Room 106
  Durham, NH 03824
  877-798-7682 (toll free)
  603-862-2694 (direct)
  603-862-2477 (fax)
  **harringt@fvtc.edu**
  **leila.harrington@unh.edu**

- The **National Center for Missing and Exploited Children**® facilitates training to law enforcement; prosecutors; and criminal- and juvenile-justice, child-serving, and healthcare professionals on issues related to missing and exploited children.

  Contact: Laura Silver
  National Center for Missing and Exploited Children
  699 Prince Street
  Alexandria, VA 22314-3175
  **jrletc@ncmec.org**
  703-837-6348

## Contacts Top

## Resources Top

**OJJDP Publication(s)**

**OJJDP's Major Grant Programs**
Fact Sheet, October 2011. This fact sheet discusses OJJDP's grant programs, which are authorized by the Juvenile Justice and Delinquency Prevention Act of 1974, as amended. 4 pages. **NCJ 234072.**
Abstract
PDF

**Protecting Children in Cyberspace: The ICAC Task Force Program**
*Bulletin*, January 2002. Discusses efforts by OJJDP's Internet Crimes Against Children Task Force Program that address emerging online threats, such as computer-facilitated sex crimes, directed at children and teenagers. 8 pages. **NCJ 191213.**
Abstract
PDF(204 KB)                                      HTML

**Protecting Children Online: Using Research-Based Algorithms to Prioritize Law Enforcement Internet Investigations, Technical Report**
OJJDP-Sponsored, May 2016. This project used data from 20 Internet Crimes Against Children task forces to develop empirically-based recommendations to assist law enforcement conducting Internet investigations. 54 pages. **NCJ 250154.**
Abstract
PDF

**Event(s)**

National Law Enforcement Training on Child Exploitation
6/12/2018 - 6/14/2018
Hilton Atlanta
Atlanta, Georgia

**Link(s)**

Project Safe Childhood
Project Safe Childhood combats the proliferation of technology-facilitated sexual exploitation crimes against children.

Internet Crimes Against Children Task Force
The ICAC Task Force Program develops effective responses to the online enticement of children by sexual predators, child exploitation, child obscenity and pornography cases.

**Other Resources**

- National Strategy for Child Exploitation Prevention and Interdiction
- Review of the Internet Crimes Against Children Task Force Program: Interim Report to the Attorney General Fiscal Years 2010 and 2011
- ICAC Task Force Contacts

**Press Releases:**

- More Than 1,000 Suspected Child Sexual Predators Arrested During Operation Broken Heart
- Department of Justice Releases the 2016 National Strategy for Child Exploitation Prevention and Interdiction
- Department of Justice Releases First National Strategy for Child Exploitation and Interdiction
- Office of Justice Program Releases Toolkit to Aid Police Responses to Children Exposed to Violence
- Deputy Attorney General Honors Alabama, Georgia Task Forces for Child Pornography Investigation
- Attorney General Jeff Sessions Delivers Remarks at National Law Enforcement Training on Child Exploitation

AMBER Alert | National Sex Offender Public Website

USA.gov | Privacy | Policies & Disclaimers | FOIA | Site Map | Contact Us | Stay Connected
A component of the Office of Justice Programs, U.S. Department of Justice

# EXHIBIT

# B

https://childrescuecoalition.org/the-solution/

## SYSTEM HIGHLIGHTS

Twelve billion records housed from multiple peer-to-peer and chat networks

Data aggregated and indexed, providing law enforcement globally with the most comprehensive view of criminal activity available anywhere

Analytics targeting the offenders at greatest risk of presently abusing children

Real-time investigative and prosecutorial assistance

# EXHIBIT

# C



NATIONAL CENTER FOR
**MISSING &
EXPLOITED**
C H I L D R E N°

June 19, 2018

James Price
USM Np. 98922004
Federal Correctional Institution
P.O. Box 779800
Miami, Florida 33177
Re:  Freedom of Information Request

Dear Mr. Price,

We have received your letter dated May 23, 2018 in which you make a Freedom of
Information Act request seeking records and reports related to a federal criminal
investigation conducted by agencies and agents of the National Internet Crimes Against
Children Task Force program.

The National Center for Missing and Exploited Children (NCMEC) is a private, non-
profit organization and therefore is not subject to the Freedom of Information Act or any
applicable federal or state statutes governing Freedom of Information, Privacy Act or
open record requests.

Thank you for contacting NCMEC.

Sincerely,

Margaret M. Klein
Litigation Counsel
703-778-6483

# EXHIBIT

# D

B"H

**JAMES PRICE**
USM No. 98922004
Federal Correctional Institution
P.O. Box 779800, Miami, Florida 33177-9800
Tel.: 305-259-2150/2268; Email: PriceJamesE@Outlook.com

August 9, 2018

**VIA EMAIL & CERTIFIED MAIL**

The Honorable Jeffery Sessions
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.,
Washington, D.C. 20530-0001

The Honorable David S. Ferriero
Archivist of the United States
National Archives and Records and Administration
700 Pennsylvania Avenue, N.W.,
Washington, D.C. 20408

Dear Mr. Sessions and Mr. Ferriero,

My name is James Price and I am the Plaintiff in a civil suit brought before the U.S. District Court for the District of Columbia, against the United States Department of Justice ("DOJ"). See Price v. Dep't of Justice, D.D.C. Case No. 1:18-CV-01339-CRC. The case was brought based on the DOJ's refusal to produce records, documents, information, and data ("subject records") in violation of the Freedom of Information Act ("FOIA") and the Privacy Act. This letter serves as **formal notice** the DOJ is in violation of the Federal Records Act ("FRA").

In brief, during the course of the FOIA process and the subsequent litigation, the DOJ admitted through counsel, the agency "does not routinely collect" the records required under the FRA statutes. Thus, the DOJ's inability to comply with FOIA was based on its predicate failure to comply with the FRA.

Numerous FOIA requests have been filed by private citizens and other organizations regarding the operations and financial expenditures of the

1

National Internet Crimes Against Children Task Force ("National ICAC Task Force"). Additionally, the Attorney General is required to submit an annual report to Congress regarding the program's operations and expenditures. The subject records of this case, are directly related to the formation of public policy, and the enforcement of such policies on a national basis. The DOJ's large-scale use of public grant funded affiliates and contract operators as critical elements of enforcement operations—that created contemporaneous federal records without preserving them—was a violation of the FRA.

An illustration of the problems created by the DOJ's violations, lies in the fundamental purpose of the FRA itself where 44 U.S.C. § 3101 states:

> "The head of each Federal agency shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency... to furnish the information necessary to protect the legal and financial rights... of persons directly affected by the agency's activities."

Further, these records include "all... materials, regardless of physical form or characteristics, made or **received** by an agency... as evidence of the organization, functions, policies, decisions, procedures, operations or other activities by the Government or because of the informational value in them." 44 U.S.C. § 3301; 36 C.F.R. § 1222.10  Such records include those accepted by a federal agency from "other units of their agency, private citizens, public officials, other agencies, contractors, [or] Government grantees... regardless of how [the records were] transmitted ([i.e.,] in person or by messenger, mail, electronic means, or by any other method)." Id.

Thus, the notion that the DOJ purported to operate a national program involving nearly a **half-billion taxpayer dollars** and did not "routinely" collect the subject records is of great public concern. Moreover, **each year** more than 10,000 citizens are **arrested** and charged with crimes under these programs. These private agency/contractor initiated and supported investigations allege crimes that culminate in government actions—i.e., arrests—without the collection and preservation of the required records, constitutes a serious and on-going violation of the FRA.

The November 28, 2011 Presidential Memorandum on Managing Government Records required that agency heads submit a report to the Archivist and the Director of the Office of Management and Budget ("OMB") that "identified any provisions, or omissions, in relevent statutes, regulations, or official NARA guidance that... pose[d] an obstacle to the agency's adoption of sound, cost-effective records management policies and practices." Pres. Mem. at § 2(b)(ii). Additionally, the memorandum directed the Director of OMB, the Archivist, and the Associate Attorney General to issue a Records Management Directive **directing** agency heads (including the DOJ itself) to take **specific steps to reform and improve** records management policies and practices within their agency." Pres. Mem. at § 3(a). The record in this matter established the DOJ was not only in violation of the FRA statutes and 34 U.S.C. § 11291 et seq., but also the President's Memorandum on improving the agency's records management.

Any process that results in the abrogation of a citizen's liberty, by its nature and under the statutes, requires the preservation of records. Moreover, the subject programs involve the disbursement of 10s of millions of taxpayer dollars each year. Thus, the agency's failure to preserve the required records raises serious public policy concerns. Based on the record before the court, it seems clear the DOJ was aware of the legal requirements that federal agencies must "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." 44 U.S.C. § 3101.

Specifically, the statutes require that each agency head shall also "establish safeguards against the removal or loss of records the head of such agency determines to be necessary and required by the regulations of the Archivist." Id. § 3105. When those safeguards fail, the Act sets forth a structure whereby the Archivist and agency heads are to work together to ensure that no documents are unlawfully destroyed. Therein, each agency head:

> "shall notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records the

head of the Federal agency knows or has reason to believe has been unlawfully removed from that agency, or from another Federal agency whose records have been transferred to the legal custody of that Federal agency." Id. § 3106.

In this case, the Department of Justice failed in its obligation to acquire the subject records—records it relied upon to obtain thousands of criminal convictions—from grant recipients and private contractors, in violation of the FRA. In at least one instance, a contractor (TLO, LLC.), entered bankruptcy where its assets were sold and divided amongst multiple acquiring parties, and its records—subject to FRA—were potentially altered, lost, corrupted, or otherwise destroyed.[1]

Where the subject records of this case remain unavailable to the public, this letter serves as formal notice that the Archivist and Attorney General are **required** under the FRA to seek the recovery of the subject records that may have been improperly removed. Furthermore, the Archivist and Attorney General should enlist the office of Special Counsel to oversee the process, and to ensure objectivity and integrity in the recovery of any and all subject records where technically possible.

Thank you in advance for your attention to this important matter. To discuss these issues in greater detail and to expedite the process before the Court, please contact the undersigned at 305-259-2150/2268 or PriceJamesE@Outlook.com.

Sincerely,

James Price

---

[1]   TLO, LLC., also maintained contracts with other government agencies including Federal Bureau of Investigation, and the United States Secret Service, at the time it declared bankruptcy.

cc: Rhonda Campbell, Attorney for the Defendant;
    Policy and Statutes Enforcement Division, Criminal Division, USAO



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee $ 3.45

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)       $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $

Postage $ .50

Total Postage and Fees $ 3.95

Sent To  Hon. J. Sessions, USAG
Street and Apt. No., or PO Box No. 950 Pennsylvania Ave, N.W
City, State, ZIP+4® Washington, DC 20530-0001

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

AUG 0 9 2018    COUNTRY LAKES BR    Postmark Here    USPS

7017 3040 0000 7486 7361



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee $ 3.45

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)       $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $

Postage $ .50

Total Postage and Fees $ 3.95

Sent To  Hon. D.S. Ferriero, U.S. Archivist
Street and Apt. No., or PO Box No. 700 Pennsylvania Ave N.W.
City, State, ZIP+4® Washington, DC 20408

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

AUG 0 9 2018    COUNTRY LAKES    USPS

7017 3040 0000 7486 7385

# EXHIBIT

# E

B"H

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

### Case No. 1:18-CV-01339-CRC

JAMES PRICE,

     Plaintiff,

v.

UNITED STATES
DEPARTMENT OF JUSTICE,

     Defendant.

_____/


### DECLARATION OF JAMES PRICE IN SUPPORT OF PLAINTIFF'S
### MOTION FOR EXTENTION OF TIME


I, JAMES PRICE, HEREBY DECLARE:


1.    My name is James Price.


2.    I am over the age of eighteen (18), and I am otherwise competent to make this declaration.


3.    This Declaration is based on my personal knowledge, and if called upon by this Court, my sworn testimony that the **facts** stated herein are true, accurate, and correct.



1

## I.   THE FOIA REQUESTS

4. Beginning in May of 2017, your Declarant filed a series of Freedom of Information Act ("FOIA") requests with the following agencies:

a.   The Department of Justice ("DOJ"), Office of Justice Programs ("OJP");

b.   The DOJ, Office of Juvenile Justice and Delinquency Prevention ("OJJDP");

c.   The Federal Bureau of Investigation ("FBI");

d.   The National Security Agency ("NSA");

e.   The White House Office of Management and Budget ("OMB");

f.   Broward County, Florida ("BCSO");

g.   Seminole County, Florida ("SCSO");

h.   Martin County, Florida ("MCSO");

i.   The City of Fort Lauderdale, Florida ("FTLPD");

j.   The City of Boynton Beach, Florida ("BBPD");

k.   The City of Boca Raton, Florida ("BRPD");

l.   The National Internet Crimes Against Children Task Force Program (National ICAC-TF Program");

m.   The National Center for Missing and Exploited Children ("NCMEC");

These requests for records, documents, information, and data **specifically targeted** the financial, operational, historical, and criminal records related to the National ICAC-TF Program. The requests were for specific records the DOJ **claimed** in court records to have **possessed** in support of numerous criminal indictments and convictions.

5.    Your Declarant interviewed numerous criminal defendants, and thousands of pages of court records, including: affidavits, reports, and the sworn testimony of multiple, National ICAC-TF Program agents.

6.    In **every** case the statements by or through the Defendant or its agents, claimed to have specific, detailed records in support of the various allegations against the accused.

7.    In the overwhelming majority of cases reviewed by your Declarant, the agents relied upon information **provided by a non-government, non-law enforcement** contractor.   The primary source of privately alleged "criminal investigative leads" to the National ICAC-TF is the Child Rescue Coalition, Inc., located in Boca Raton, Florida.

8.    Your Declarant obtained and reviewed sworn affidavits by the contractor's lead software developer, head of law enforcement operations, and general counsel.   The DOJ offered evidence alleged by the private contractor in numerous cases, and opposed numerous attempts to permit inspection or testing of the contractor's software.

9.    In numerous cases, the DOJ claimed the case records and evidentiary records were **not subject to disclosure** under Fed. R. Crim. P. 16, because the records were **not in the custody** of the DOJ.

10.   In **every** case, the agents misrepresented the true source and nature of the alleged records, often conflating the agents actions, with actions performed by the contractor or often by the contractor's automated software system.

3

11. Based on the sworn statements, affidavits, reports, testimony, and the Department of Justice's own pleadings, the records, documents, information, and data requested, **was in the possession** of the DOJ.

## II.  THIRD-PARTY AFFIDAVITS AND WAIVER OF PRIVACY

12.  Your Declarant has obtained affidavits and Department of Justice **approved** privacy waivers from eight (8) additional known victims of the DOJ's violations.  Your Declarant is currently working to identify and obtain affidavits and privacy waivers for additional known victims of the Defendant's misconduct.

## FURTHER DECLARANT SAYETH NAUGHT.

## III.  DECLARATION

I, James Price, hereby declare, under the penalty of perjury, and pursuant to Title 28 U.S.C. § 1746, the foregoing is true and correct.

Executed on August 9, 2018.

James Price
Plaintiff
USM No. 98922004
Federal Correctional Institution
P.O. Box 779800
Miami, Florida 33177-9800
Tel.: 305-259-2150/2268
Email: PriceJamesE@Outlook.com

4