B"H

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

### Case No. 1:18-CV-01339-CRC


JAMES PRICE,
15801 S.W. 137th Avenue
Miami, Florida 33177-9800,

      Plaintiff,

v.

UNITED STATES
DEPARTMENT OF JUSTICE,
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001,

      and

JEFF SESSIONS,
in his official capacity as
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001,

      and

DAVID S. FERRIERO,
in his official capacity as
Archivist of the United States
The National Archives and
Records Administration
8601 Adelphi Road
College Park, Maryland 29740-6001,

      Defendants.
_____/


## SECOND AMENDED COMPLAINT



RECEIVED
Mail Room

OCT - 1 2018

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

6.   The Honorable David S. Ferriero serves as the U.S. Archivist and has his principal place of business at the National Archives and Records Administration ("NARA"), 8601 Adelphi Road, College Park, Maryland 20740-6001.   Mr. Ferriero serves in this official capacity by appointment of the President of the United States and having been confirmed by a majority of the United States Senate.   Mr. Ferriero is sued only in his official capacity as the Archivist, where he is subject to the FRA pursuant to Title 44 U.S.C. § 2901 et seq.

### III.   STATEMENT OF FACTS

7.   The Plaintiff filed a series of FOIA requests with the DOJ.   The Plaintiff requested specific records, documents, information, and data that the DOJ was required to have collected and preserved under the Title 44 U.S.C. § 3101 et seq., Title 5 U.S.C. § 306, and Title 34 U.S.C. § 11291 et seq. Specifically, under under 34 U.S.C. § 11291 et seq., the DOJ was required to provide annual reports to the United States Congress—that contained the information requested—as required under the statutes, 5 U.S.C. § 306, 36 U.S.C. §§ 1115-1119 and §§ 9703-9704, as part of the Government Performance and Results Act (Public Law 103-62; 107 Stat. 235).   See also Public Law 110-401, Title I § 106, 122 Stat. 4238.

### A.   THE FIOA REQUESTS

8.   The Plaintiff filed his initial FOIA requests on **May 5, 2017**.   See Exhibit "A".   The DOJ acknowledged Price's request on **May 16, 2017**, and assigned the FOIA request the tracking identifier OJP FOIA No. 17-00209. See Exhibit "B".

4

9.  The DOJ provided an initial response on **May 31, 2017.**  That response **DID NOT** contain any of the requested records.  Instead, the DOJ attempted to substitute a summary "Pivot Table" where **ALL** "Record Numbers" and "Jurisdictional Identifiers" were **redacted.**  See Exhibit "C" at 4-5.  The DOJ claimed the excised information was withheld based on the exemption defined in 5 U.S.C. § 552(b)(6).  See Exhibit "C" at 1:¶2.

10.  It is well documented in the Defendant DOJ's program guidelines that the records Mr. Price requested were in fact emails, and their associated attachments, sent by agencies of the National ICAC-TF Program to the icaccasetracker@usdoj.gov email address.  These records are required to be submitted **monthly** by each participating agency of the task force. Additionally, the Defendant's Memorandum of Understanding with each task force agency **required to maintain copies of ALL records** regarding task force operations.   Therein,  Defendant's  statment  that  "no  information"  was available for two (2) of Mr. Price's requests was patently false.  Id.

11.  The Plaintiff filed an administrative appeal to the Office of Information Policy ("OIP") on or about August 2017.  The DOJ's Office of General Counsel ("OGC") acknowledged Mr. Price's appeal on **September 19, 2017,** and assigned the appeal the tracking identifer DOJ-AP-2017-006671. See Exhibit "D" at 1:¶2.   The OGC denied the Plaintiff's administrative appeal, and invited him to seek this Court's review pursuant to Title 5 U.S.C. § 552(a)(4)(B).  See Exhibit "E" at 1:¶5.

12.  Mr.  Price filed a second series of FOIA requests on **October 31, 2017.**  See Exhibits "F" through "H".  The DOJ acknowledged the Plaintiff's second set of requests on **November 8, 2017,** and assigned them the tracking

identifier OJP FOIA No. 18-00059.  See Exhibit "J".  On or about **November 22, 2017,** OJP transferred an undisclosed portion of Mr. Price's requests internally to the **Criminal Division** of the United States Attorney's Office ("USAO-CD").  The USAO-CD assigned those requests the separate tracking identifier CRM-300634425.  Id.

13. This case was initially entered on the civil docket of the Southern District of Florida[1] on **November 29, 2017** at ECF No. 1.  Following service of the Complaint on the DOJ on **December 7, 2017,** the agency **REFUSED** to provide any further responses to those requests.

14. Pursuant to Title 5 U.S.C. § 552(a)(6)(C), the DOJ's failure to provide a timely response, within the period defined by the statute, constituted an exhaustion of the agency's administrative remedies on the pending requests.  Subsequtently, Mr. Price served the DOJ notice of Default on **January 5, 2018.**  See Exhibit "K".

15. The DOJ refused to provide either: (1) the actual records Price requested; or (2) a "Vaughn Index"[2].  Moreover, the DOJ has refused to provide any explanation for its alleged inability to locate, or produce either the records or a Vaughn Index despite the former being required under the statute and the latter under circuit precedent.

---

[1]    This case was transferred to the District of Columbia on an Order of the court at ECF No. 26.

[2]    A "Vaughn Index" as set forth in Citizens for Responsibility and Ethics in Washington v. United States Dep't of Justice, 409 U.S. App. D.C. 113 (D.C. Cir. 2014) describes the nature of the information withheld and how the claimed exemption is applicable.

16. On May 7, 2018, the Plaintiff filed a FOIA request to OJJDP seeking copies of the "Memorandum of Understanding" ("MOU") agreements executed between OJJDP, various law enforcement agencies, the individual U.S. Attorney's offices, and a copy of the ICAC-TF Operational and Investigative Standards ("O & I Standards"). See Exhibit "L". The OGC provided its response on August 3, 2018 and assigned the tracking identifier OJP-FOIA-18-00288. In its response, the OGC claimed there were **no records** of the MOUs and produced a heavily redacted copy of the O & I Standards. Id. The O & I Standards document is **currently available in its entirety** on a public website where the Plaintiff initially learned of the document's existence.

17. On August 8, 2018, Mr. Price appealed OGC's decision to OIP, the appeal was assigned the tracking identifier DOJ-AP-2018-007492. The Defendant decision on review was due on or before **September 6, 2018**. The Defendant failed to respond within the time allotted by the statute [5 U.S.C. § 552(a)(6)(C)], thus exhausting the Plaintiff's administrative remedies.

18. On January 10, 2018, the Plaintiff filed a FOIA request to OJP seeking various financial records of the National ICAC-TF Program. See Exhibit "H". The OGC prvided an initial response on **April 11, 2018**, and assiged the tracking identifier OJP-AP-18-00136. The initial OGC response included some summary data and stated additional response documents were located and would be "sent upon completion [of processing]". See Exhibit "N". On **June 29, 2018**, OGC produced one (1) program code and two (2) appropriations codes with the corresponding Treasure symbols. The OGC reversed its previous statement and claimed, "This completes the process of your request." See Exhibit "O".

7

19. On August 8, 2018, Mr. Price appealed OGC's decision to OIP.  OIP responded and assigned the tracking identifier DOJ-AP-2018-007500.  The Defendant's decision on review was due on or before **September 6, 2018**.  The Defendant failed to respond within the time alloted by the statute [5 U.S.C. § 552(a)(6)(C)], thus exhausting the Plaintiff's administrative remedies.[3]

20. The Plaintiff filed eight (8) other FIOA requests between January 31, 2018 and June 10, 2018.  In response to **EVERY REQUEST** the Defendant claimed the request fell under "unusual circumstances" pursuant to 5 U.S.C. § 552(a)(6)(B)(i)-(iii).  The Plaintiff responded to the Defendant's claims of unusual circumstances with letters informing the agency it had failed to articulate any of the factors set forth in the statute to justify the alleged unusual circumstances.  The Defendant's practice of routinely claiming unusual circumstances effected a policy—informal or otherwise—that was calculated to violate the statutes, and to thwart the intent of Congress.  The Plaintiff's requests for records, documents, information, and data were targeted, specific and often included records the Defendant was **required** to collect and preserve under the statutes and or were required to be reported under Congressional oversight.  Many of the subject records were simple, even innocuous, e.g., an organization chart, a chart of financial accounts, designation statistics, etc.

21. On May 1, 2018, the Plaintiff filed a 3rd-Party FOIA request— including a fully executed DOJ Form-361, waiver of privacy rights—for the case specific records, documents, information, and data regarding Sheldon Joel Ranmaraine.  The Ramnaraine case was Federal Bureau of Investigation

---

[3]    On or about January 2018, the Plaintiff began filing FOIA requests and administrative appeals using the DOJ FOIA Online Portal.

case, prosecuted by the United States Attorney for the Middle District of
Florida. Mr. Price had already requested **and received** the case files from
the City of Boynton Beach, Florida, and statements from Seminole County
Florida regarding the Defendant DOJ's possession of all records. The
Defendant DOJ, **refused** to produce the records citing exemptions under 5
U.S.C. § 552(b)(7)(E) and (b)(7)(F). The Plaintiff appealed Defendant
DOJ's decision, and moves this Court to adjudicate the matter herein, where
the records were previously released under FOIA. See OJP-FOIA-18-00260 at
Exhibit "P".

## B. NOTICE OF NON-COMPLIANCE WITH FEDERAL RECORDS ACT

22. On August 9, 2018, the Plaintiff provided **formal notice** of the DOJ's
past and on-going violations of the FRA via email and certified mail to the
Attorney General and the Archivist. See ECF No. 35 at 18-21. On August
31, 2018, Laurence Brewer, Chief Records Officer for NARA, provided an
initial response indicating he was unaware of the DOJ's violations. The
Plaintiff responded to NARA with additional information, including copies of
the statutes and citations from internal DOJ documents and details of records
alienated, removed, or destroyed in non-governmental systems.

23. Specifically, the Plaintiff alerted NARA to the DOJ's use of a
privately operated Software-as-a-Service ("SaaS") platform to create
operational records for the National ICAC-TF Program. Those records include
but are not limited to emails, a collaborative message exchange, files,
administrative subpoena records, 3rd-party database records, IP Address
records, various "hash values" e.g., SHA-1 values, MD-5 values, etc., and
other historical records. These records may also include the statutory [34

9

U.S.C. § 11101] requests for, and responses from the National Center for Missing and Exploited Children's Child Victim Identification Program ("CVIP"). On **September 18, 2018,** NARA responded to the Plaintiff via email that based on the additional information, further investigation would be required.

### C.  THE FEDERAL RECORDS ACT

24. At all times during the relevant period, the Federal Records Act defined a "record" as any material, "regardless of physical form or characteristics, **made or received** by an agency of the United States Government [("USG")] under Federal Law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of the data in them." See 44 U.S.C. § 3301; 36 C.F.R. § 1220.18.

25. At all times during the relevant period, the Federal Records Act required all agency heads, including the Attorney General, to "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency." See 44 U.S.C. § 3102.

26. At all times during the relevant period, the Federal Records prohibited the unauthorized alienation or destruction of records [44 U.S.C. § 3314], **OR** the removal of records from the legal custody of an agency. See 36 C.F.R. §§ 1222.24(a)(6), 1230.10(a); see also 36 C.F.R. § 1230.3(b).

10

27. At all times during the relevant period, the Federal Records Act directed agency heads, including the Attorney General, to establish "safeguards" against the removal or loss of records, including notifications to agency officials and employees that records are **not to be alienated or destroyed** unless authorized and of "the penalties provided by law for the unlawful removal or destruction of records." See 44 U.S.C. § 3105; 36 C.F.R. § 1230.10 (requiring agency heads to "[p]revent the unlawful or accidental removal, defacing, alteration, or destruction of records"); 36 C.F.R. § 1230.12; 18 U.S.C. § 2071 ("fines, imprisonment, or both may be imposed for the willful and unlawful destruction of records").

28. At all times during the relevant period, the Federal Records Act established the National Archives and Records Administration as the primary agency for records management oversight.   The FRA also established the Archivist as responsible for assisting federal agencies in maintaining satisfactory documentation of agency policies and transactions, including the promulgation of standards, procedures, and guidelines with respect to records management.

29. At all times during the relevant period, the Federal Records Act mandated that an agency promptly notify NARA and produce a comprehensive report when records were unlawfully or accidentally removed, defaced, altered, or destroyed.  See 44 U.S.C § 3106(a); 36 C.F.R. §§ 1230.10(d) and § 1230.14.

30. At all times during the relevant period, the Federal Records Act **required** the agency heads, including the Attorney General, to collaborate with the Archivist to "initiate action through the Attorney General for the

recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency." See 44 U.S.C. § 3106(a); see also 36 C.F.R. § 1230.18. Additionally, if that agency head did not initiate an action for such recovery or other redress within a reasonable period of time, the Archivist "shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." See 44 U.S.C. § 3106(b).

31. At all times during the relevant period, the Federal Records Act **required** the Archivist to "assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law" and provided that the Archivist "shall request the Attorney General to initiate such an action, and shall notify Congress when such a request has been made" if the agency head has failed to do so within a reasonable time. See 44 U.S.C. § 2905(a).

## D.  THE ADMINISTRATIVE PROCEDURES ACT

32. The APA is the statutory authority for a reviewing court to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms an agency's actions... ", including [5 U.S.C. § 706(1)] to compel agency action unlawfully withheld or unreasonably delayed, and (2) to hold unlawful and set aside agency action, finding, and conclusions... ". Moreover, in making the aforementioned determination, the court shall review the **whole record** or those parts cited by a party, and due account shall be taken of the rule of prejudicial error.

33. In light of Defendants Sessions' and Ferriero's failure to take action to recover the records or to prevent future alienation, removal, or destruction of federal records, the Plaintiff as a private litigant, is entitled to bring an action to compel compliance with the law. See Armstrong v. Bush, 924 F.2d 282, 296 (D.C. Cir. 1991) (holding "[I]f the agency head or Archivist does nothing while an agency official destroys or removes records... private litigants may bring suit to require the agency head and the Archivist to fulfull their statutory duty to notify Congress and ask the Attorney General to initiate legal action.").

## D. THE FREEDOM OF INFORMATION ACT

34. Congress' enactment of the Freedom of Information Act [Title 5 U.S.C. § 552] and the Privacy Act [Title 5 U.S.C. § 552a] were specifically designed to ensure that an informed citizenry was empowered to act as a needed check against corruption [in government agencies] and to hold the governors accountable to those governed. See John Doe Agency v. John Doe Corporation, 493 U.S. 146, 110 S. Ct. 471, 107 L. Ed. 2d. 462 (1989), citing NLRB v. Robbins Tire Rubber Co., 437 U.S. 214, 242, 98 S. Ct. 2311, 2327, 57 L. Ed. 2d. 159 (1978). The Court held, "the basic purpose of FOIA is... vital to the functioning of the democratic society." No more important role can be served by the Freedom of Information Act than working to ensure that propriety of the department charged with the administration of justice on behalf of is citizens.

35. The courts have long held that FOIA "was enacted to facilitate public access to Government documents" and "was designed to 'pierce the veil of administrative secrecy and to open agency action to the light of public

scrutiny.'" See Dep't of State v. Ray, 502 U.S. 164, 173, 112 S. Ct. 541, 116 L. Ed. 2d. 526 (1991) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 361, 96 S. Ct. 1592, 48 L. Ed. 2d. 11 (1976)). The Court has described FOIA's goal as one of "broad disclosure" and "insisted that the exemptions be 'given a narrow compass'". See Miller v. Dep't of Navy, 131 S. Ct. 1259, 1265, 179 L. Ed. 2d. 268 (2011) (quoting Dep't of Justice v. Tax Analysts, 492 U.S. 136, 151, 109 S. Ct. 2841, 106 L. Ed. 2d. 112 (1989)); accord FBI v. Abramson, 456 U.S. 516, 630, 102 S. Ct. 2054, 72 L. Ed. 2d. 376 (1982). The echoes of the Court could not have been more clear than where it held, "FOIA's limited exemptions do not obscure the basic policy that **disclosure, not secrecy,** is the dominant objective of the Act." See Dep't of Interior v. Klamath Water Users Protective Ass'n., 532 U.S. 1, 8, 121 S. Ct. 1060, 149 L. Ed. 2d. 97 (2001) (emphasis added) (quoting Rose, 425 U.S. at 361).

36. The relevant portion of Title 5 U.S.C. § 552(a)(3) states an agency shall:

> "**(A)** Except with respect to the records made available under Paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records (i) resonably describes such records and (ii) is made in accordance with published rules stating the time, place, fee (if any), and procedures to be followed, shall make the records **promptly available** to any person.

> **(B)** In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or

format.   Each agency shall make reasonable efforts to maintain its records in forms and formats that are reproducible for purposes of this section.

**(C)** In responding under this paragraph to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format, except when such efforts would significantly interefere with the operation of the agency's automated information system.

**(D)** For the purposes of this paragraph, the term 'search' means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request."

## IV.   THE COUNTS AND OFFENSES

37. The Plaintiff presents the following Counts for declaratory and injunctive relief under the statutes:

### COUNT 1

**(Administrative Procedures Act, 5 U.S.C. § 701 et seq.,
for declaratory and injunctive relief)**

38. The Plaintiff realleges paragraphs 1-36, as if fully stated herein.

39. Under the FRA, the head of a federal agency must notify the Archivist of any removal or alienation of records from the agency of which he is the head, that shall come to the agency head's attention and, with the assistance of the Archivist, must initiate action through the Attorney General for the recovery of those records.   See 44 U.S.C. § 3106.

15

40. The records requested by the Plaintiff under FOIA are subject to the FRA.

41. The records removed and or alienated in the privately operated SaaS system, are records subject to FRA.

42. The records unavailable to the Defendant for production under FOIA, were removed from the Department of Justice.

43. Defendant Sessions has actual and constructive knowledge of the removal of the records from the Department of Justice.

44. Defendant Sessions failed to "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency" and failed to prevent "the removal of records from the legal custody" of the agency.  See 44 U.S.C. § 3102 and 36 C.F.R. §§ 1222.24(a)(6), § 1230.3(b), and § 1230.10(a).

45. Defendant Sessions has violated his duty under 44 U.S.C. § 3106 by failing to notify the Archivist concerning the unlawful removal of the records, and by failing to initiate legal action through his [the Office of the Attorney General] to recover the records.

46. Defendant Sessions' failure to notify the Archivist concerning the unlawful removal of records, and failure to initiate action through his office to recover the records constitutes a final agency action, for which there is no other adequate remedy in a court of law.

16

47. Defendant Sessions' failure to notify the Archivist concerning the unlawful removal of the records was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the FRA.

48. The Plaintiff is being irreparably harmed by reason of Defendant Sessions' failure to take any action to recover the records, as the Plaintiff, with numerous pending FOIA requests to the DOJ, is being prevented from accessing responsive records.

49. The Plaintiff will continue to be irreparably harmed unless and until Defendant Sessions notifies the Archivist concerning the unlawful removal of federal records from the DOJ and initiates action through his office to recover the records and otherwise conforms his conduct to the requirements of the law.

50. The Plaintiff is therefore entitled to a declaratory judgment that Defendant Sessions is in violation of his non-discretionary, statutory duties under the Federal Records Act, and to preliminary and permanent injunctive relief requiring Defendant Sessions to recover unlawfully alienated, destroyed, or removed records, to seek other redress, as permitted under the law, and to prevent further removal, alienation, or destruction of federal records.

## COUNT 2

### (Administrative Procedures Act, 5 U.S.C. § 701 et seq., for declaratory and injunctive relief)

51. The Plaintiff realleges paragraphs 1-36, as if fully stated herein.

17

52. Defendant Ferriero has actual and constructive knowledge of the removal of the records from the Department of Justice.

53. Defendant Ferriero has violated his duty 44 U.S.C. § 2901(a) and 44 U.S.C. § 3106 by failing to initiate legal action through the Attorney General to recover the unlawfully alienated or removed federal records, and to notify Congress of such actions.

54. Defendant Ferriero's failure to initiate legal action through the Attorney General, and to notify Congress of such actions was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the FRA.

55. The Plaintiff is being irreparably harmed by reason of Defendant Ferriero's failure to initiate any legal action to recover the records, as the Plaintiff, with numerous pending FOIA requests to the DOJ, is being prevented from accessing responsive records.

56. The Plaintiff will continue to be irreparably harmed unless and until Defendant Ferriero notifies the Attorney General and Congress concerning the unlawful removal of federal records from the DOJ and initiates action through the Attorney General to recover the records and otherwise conforms his conduct to the requirements of the law.

57. The Plaintiff is therefore entitled to a declaratory judgment that Defendant Ferriero is in violation of his non-discretionary, statutory duties under the Federal Records Act, and to preliminary and permanent injunctive relief requiring the Defendants to recover unlawfully alienated, destroyed, or

removed records, to seek other redress, as permitted under the law, and to prevent further alienation, removal, or destruction of federal records.

## COUNT 3

### (Freedom of Information Act, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, for declaratory and injunctive relief)

58. The Plaintiff realleges paragraphs 1-36, as if fully stated herein.

59. The Defendant DOJ, refused to produce the records described with "reasonable specificity", to wit: (1) the Case Tracking Reports for the National ICAC-TF Program; (2) the Monthly Performance Measure Reports for the National ICAC-TF Program; (3) the organizational chart for the Child Exploitation and Obscenity Section ("CEOS") of the USAO-CD; and (4) a list of cases referred to the High Technology Investigative Unit ("HTIU") for assistance.  The records were requested with the specific name, region, and date(s) as provided for in the statutes.  The Defendant DOJ did not claim any exemptions to justify is decision.

60. The Defendant DOJ refused to produce the records regarding the National ICAC-TF Program Case No. LC-10-12-141/11-17890 **OR** certify the subject records were NONEXISTENT.  The Defendant DOJ did not claim any exemptions to justify its decision.

61. The Defendant DOJ refused to produce **ANY** of the more than 500+ Secure Hash Algorithm version 1 ("SHA-1") values **previously claimed in court documents and testimony** regarding National ICAC-TF Program Case No. LC-10-12-141/11-17890 **OR** certifiy the records as NONEXISTENT.  The Defendant DOJ did not claim any exemptions to justify its decision.

19

62. The Defendant DOJ refused to produce the "Record Numbers" and "Jurisdictional Unique Identifiers" of the summary data offered in lieu of the actual records requested.   The record numbers and identifiers pertain to **NEITHER** agency personel or medical in type or nature **NOR** are they "similar files".   The "Jurisdictional Unique Identifiers" and "Record Numbers" identify specific records, related to specific **agency actions and decisions.**

63. The Defendant DOJ refused to produce copies of the National ICAC-TF Program operations manual, or other substantially similar documents, memorandums, standards, etc. that would be of a similar nature.   The Defendant DOJ did not claim any exemptions to justify its decision.

64. The Defendant DOJ refused to produce an index or other records or documents of all cases and evidence processed by the HTIU from January 2011 through December 2012.   The Defendant DOJ did not claim any exemptions to justify its decision.

65. The Defendant DOJ refused to provide a complete list of Equities identified, submitted to, requested from, or implemented by or through the VEP[4] by CEOS/HTIU.   The DOJ did not claim any exemptions to justify its decision.

---

[4]   The VEP was developed to codify and systemize the U.S. Government's handling of "zero day" exploits.   Zero day exploits are flaws in information technology (IT) hardware or software products for which **no mitigation** is available... ".   See Classified Declaration of James B. Richberg, National Intelligence Manager-Cyber, Office of the Director of National Intelligence, ECF No. 36 at 7:¶11.

66. The Defendant DOJ refused to produce two additional documents identified regarding funding, grants, appropriations of the National ICAC-TF Program for Fiscal Years 2008 through 2017. The Defendant DOJ did not claim any exemptions to justify its decision.

67. The Defendant DOJ refused to produce a chart of accounts for "all Department of Justice, and Office of Justice Programs accounts, including account names, account numbers, account codes and account designations." The Defendant DOJ did not claim any exemptions to justify its decision.

68. The Defendant DOJ refused to produce summary reports of all DOJ and OJP expenditures for Fiscal Years 2008 through 2017. The DOJ did not claim any exemptions to justify its decision.

69. The Defendant DOJ refused to provide records, documents, reports, or raw data of all authorizations, grants, reimbursements, disbursements, or other funding, to determing the total funding of any source requested or received by any entity, agency, or organization related to or in connection with the National ICAC-TF Program for Fiscal Years 2008 through 2017. The DOJ did not claim any exemptions to justifiy its decision.

70. The Plaintiff is being irreparably harmed by reason of the Defendant DOJ's failure to disclose records under a lawful request.

71. The Plaintiff will continute to be irreparably harmed unless and until the Defendant DOJ produces the requested records.

72. The Plaintiff is entitled to a declaratory judgment that the Defendant DOJ is in violation of the Freedom of Information Act and the Privacy Act, and to preliminary and permanent injunctive relief requiring the Defendant DOJ to produce all requested records, to seek other redress, as permitted under the law.

## COUNT 4

**(Freedom of Information Act, 5 U.S.C. § 552,
Privacy Act, 5 U.S.C. § 552a, and
the Federal Records Act, 44 U.S.C. §§ 2901 et seq., and § 3101 et seq.,
for declaratory and injunctive relief)**

73. The Plaintiff realleges paragraphs 1-36, as if fully stated herein.

74. The Defendant DOJ has adopted, endorsed, or implemented a policy and or practice that constitutes an on-going failure to abide by the terms of the Freedom of Information Act, the Privacy Act, and the Federal Records Act, ("the Acts").

75. The Defendant DOJ has implemented a defacto policy and practice of claiming "unusual circumstances" as part of the Defendant agency's initial response to requests for records, documents, information, or data from the agency.

76. The Defendant DOJ has actual and constructive knowledge of the Acts, and its legal obligation to provide responsive records to lawful requests.

77. The Defendant DOJ implemented such defacto policies and practices to delay the disclosure of information under lawful requests.

78. The Defendant DOJ violated the Acts by and through the authorization, implementation, and on-going use of a **private** recordkeeping system, known as the Child Protection System ("CPS") by the National ICAC-TF Program.

79. The Defendant DOJ was at all times aware the use of the CPS system was in violation of the Acts.

80. The Defendant DOJ authorized, funded, and implemented the use of an **external recordkeeping system** as a deliberate means to effect a policy and practice of the alienation, removal, and or destruction of federal records.

81. The Plaintiff is being irreparably harmed by reason of the Defendant DOJ's authorization and implementation of a policy and practice to impair the Plaintiff's lawful access to information.

82. The Plaintiff will continue to be irreparably harmed unless and until the Defendant DOJ ceases the operation of unlawful recordkeeping practices and delying practices, and otherwise conforms its conduct to the requirements of the law.

83. The Plaintiff is therefore entitled to a declaratory judgment that the Defendant DOJ is in violation of its non-discretionary duties under the Acts, and to preliminary and permanent injunctive relief requiring the Defendant

DOJ to cease all unlawful recordkeeping and delay policies and practices, to seek other redress, as permitted under the law, and to prevent further impairment of the Plaintiff's lawful access to information in the future.

## V.  PUBLIC INTEREST IN DISCLOSURE

84. The subject records of this case represent a compelling public interest where the Department of Justice disbursed **in excess of a third of a billion**[5] taxpayer dollars to fund the now-missing-records of the National ICAC-TF Program.  These records also depict government agencies working in concert, shielded from the public eye, while executing a deliberate and carefully choreographed scheme to defraud taxpayers and violate the constitutional protections due every citizen.  The Department of Justice made the conscious decision to expose the privacy and security of millions of Americans and **tens of millions** of Microsoft Corporation's customers worldwide to conceal its conduct.  The subject records of this case represent a compelling public interest where DOJ and other agencies had **direct knowledge** of a significant security vulnerability in one of the most popular and common commercial operating systems—Microsoft's Windows[TM] operating system—but **FAILED TO DISCLOSE** the vulnerability to Microsoft or the public, in violation of its [USG] own policy.[6]

---

[5]  The OJJDP has spent in excess of **311.6 Million taxpayer dollars** related to the National ICAC-TF Program from FY 2008 through FY 2017.  The the "alienated, removed, or destroyed" subject records of this case represent the "public's receipts" for the agency's expenditures.

[6]  President's Review Group on Intelligence and Communications Technology, Liberty and Security in a Changing World, at 219 (Dec. 12, 2013), http://www.whitehouse.gov/sites/default/files/docs/2013-12-12_rg_final_report.pdf.

## VI.   CONCLUSION

85. In summary, the AG as the agency head of the DOJ was required to establish safeguards, "includ[ing] making it known to officials and employees of the agency" [44 U.S.C. § 3105] that records were not to be removed or destroyed except in accordance with the law, and the penalties for the unlawful removal or destruction of records. The AG violated the statutes in a clear and unambiguous manner. Further, Mr. Sessions upon being informed of the violations failed to act to stop the unlawful removal or destruction of federal records. Mr. Ferriero upon notice of the DOJ's violations for the FRA failed to execute his non-discretionary duty to initiate legal and enforcement proceedings against the agency, nor has he notified Congress. See 44 U.S.C. §§ 2905(a) and § 3106.

86. Notwithstanding the removal or destruction of federal records by the Department of Justice, the agency has refused to disclose the remaining records in its possession in violation of the statutes. The Plaintiff was harmed by the Defendants actions individually and collectively. The Plaintiff notified the AG and the Archivist of the unlawful removal of federal records and asked that they fulfill their statutory duty to initiate legal action to recover the unlawfully removed records and to prevent further loss of federal records. Mr. Price has pending FOIA requests for records, including those records that have been removed or destroyed. The Defendants' actions have unlawfully interfered with the Plaintiff's right to obtain such records.

87. Stated another way, the Defendant DOJ alleged the now missing records to: (1) defendants; (2) counsel; (3) district courts; and (4) relied upon the missing subject records of this case and similar records as **evidence**

in criminal proceedings that culminated in criminal convictions. The Defendant DOJ subsequently used the now missing subject records as the justification—the basis—to seek increased funding for grants, reimbursements, and appropriations under the guise of a successful public policy. In fact, the Defendant DOJ took deliberate steps in violation of the law to ensure that such records were alienated, destroyed, or otherwise removed from the legal custody of the agency.

88. Additionally, the Defendant DOJ set on a deliberate course of action to thwart compliance with the law and the rules of this Court through the knowing and willful use of evidence produced by and through the use of classified Equities from a classified intelligence program operated by the National Security Agency—the VEP—without disclosure under the Classified Information Procedures Act, of the classified nature, and the source of the alleged evidence as required under Fed. R. Crim. P. 16, Fed. R. Evid. 702 and 901, 18 U.S.C. App. 3, and the local rules of all district courts.

**WHEREFORE,** the Plaintiff respectfully requests this Court enter an Order for declaratory judgment against the Defendants, and preliminary and permanent injunctive relief as follows:

a. **DECLARE** that all subject records of this case and all substantially similar or related records are subject to the FRA.

b. **DECLARE** Defendants Sessions' and Ferriero's failure to take any action to recover the records as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the Acts;

c. **ORDER** Defendant Sessions to initiate legal action against the Department of Justice for the unlawful removal and or destruction

26

of federal records, with the assistance of the Archivist pursuant to
44 U.S.C. § 3106;

d. **ORDER** Defendant Ferriero as the Archivist, to request Defendant
Sessions in his capacity as Attorney General to initiate such action
as required to recover the records, and notify Congress of this
matter pursuant to 44 U.S.C. §§ 2905(b) and § 3106(b);

e. **ORDER** the Department of Justice to produce the subject records
forthwith **OR** assert the State-Secrets Privilege regarding the
classified elements of Count 3;

f. **ORDER** the Department of Justice to certify alienated, unrecovered,
or destroyed records as NONEXISTENT;

g. **GRANT** the Plaintiff an award of reasonable fees, costs, and
expenses as were necessarily incurred in the bringing and
prosecution of this case;

h. **GRANT** the Plaintiff such other and further relief as this Court
deems fair and equitable.[7]

Respectfully Submitted,

James Price
Plaintiff
USM No. 98922004
Federal Correctional Institution
P.O. Box 779800
Miami, Florida 33177-9800
Tel.: 305-259-2150/2268
Email: PriceJamesE@Outlook.com

---

[7]     Due to a delay in the receipt by the institution of exhibits stored in
electronic format, all exhibits referenced in the amended complaint will be
filed separately as an "Exhibits Supplement to the Second Amended Complaint"
according to their internal reference in the amended complaint.