B"H

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

### Case No. 1:18–CV–01339–CRC

JAMES PRICE,

    Plaintiff,

v.

UNITED STATES
DEPARTMENT OF JUSTICE,

    and

JEFFERSON B. SESSIONS III,

    and

DAVID S. FERRIERO,

    Defendants.

_____/

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION

TITLE 5 U.S.C. § 701 et seq. — ADMINISTRATIVE PROCEDURES ACT
TITLE 44 U.S.C. § 2901 et seq. — FEDERAL RECORDS ACT
TITLE 44 U.S.C. § 3101 et seq. — FEDERAL RECORDS ACT

**COMES NOW,** James Price ("the Plaintiff"), and pursuant to Fed. R. Civ. P. 65 files this, his motion for a temporary restraining order ("TRO"), and a preliminary injunction ("PI"). The Plaintiff respectfully moves this Court for entry of a Temporary Restraining Order to enjoin the Defendant from further use of Software-as-a-Service based ("SaaS-based"), Cloud-based, or other non-government owned or operated software or systems that remove, alienate, or cause to be removed, or alienated, records from the

1


RECEIVED
Mail Room

JAN 1 5 2019

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

custody of the Defendants; and the issuance of a preliminary injunction to **preserve the status quo** of all records previously removed or alienated from the custody of the Defendants, their subordinate agencies, officers, partners, affiliates, program participants, or other contract operators. A proposed order is attached for this Court's convenience.

The factual basis and arguments in support of this motion are discussed in the accompanying Memorandum of Points and Authorities in Support of the Plaintiff's Motion for Temporary Restraining Order, and Preliminary Injunction. The Plaintiff respectfully requests, pursuant to LCvR 65.1(d), that this Court **set a hearing** on this application for a temporary restraining order and preliminary injunction at the Court's earliest convenience.

The Plaintiff notified the Chief of the Civil Division for the United States Attorney's Office in Washington, D.C., Daniel VanHorn (via email daniel.vanhorn@usdoj.gov) at the request of counsel for the Defendants, Ms. Rhonda L. Campbell, and requested the Defendants position on this matter. Mr. VanHorn indicated the Defendants oppose this motion.

Respectfully Submitted,

James Price
Plaintiff
USM No. 98922004
Federal Correctional Institution
P.O. Box 779800
Miami, Florida 33177-9800
Tel.: 305-259-2150/2268
Fax: 305-259-2383
Email: PriceJamesE@Outlook.com

B"H

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

### Case No. 1:18-CV-01339-CRC

JAMES PRICE,

     Plaintiff,

v.

UNITED STATES
DEPARTMENT OF JUSTICE,

     and

JEFFERSON B. SESSIONS III,

     and

DAVID S. FERRIERO,

     Defendants.

_____/

### ORDER

THIS MATTER is before the Court on the Plaintiff's Motion for Temporary Restraining Order, and Preliminary Injunction, pursuant to Fed. R. Civ. P. 65. The Court has carefully reviewed the motion, the accompanying memorandum, declaration, and exhibits attached thereto. Thus, the Court is fully apprised of the issues in this matter.

Accordingly, the Plaintiff's motion is due to be **GRANTED**. It is hereby,

**ORDERED** the Defendants are immediately enjoined from the use of any SaaS-based or Cloud-based software or systems not owned or operated by government, or any other substantially similar software or services that remove, alienate, or cause the removal or alienation of records from the Defendants' custody; it is further,

1

**ORDERED** the Defendants are immediately enjoined from the use of any software, systems, or other substantially similar services that have not been certified for compliance with the Federal Information Security Management Act ("FISMA"). The Defendants shall provide to this Court copies of all FISMA compliance audits, reviews, certifications, and other documentation as required under the statutes [44 U.S.C. §§ 3551-3559] for all software, systems, or other services that have been used, or are currently in use by the Defendants; it is further,

**ORDERED** the Defendants shall provide to this Court—**within thirty (30) days**—a proposed plan to identify and preserve the status quo of all records removed from the Defendants' custody.

**DONE AND ORDERED** in Chambers, at Washington, D.C., this ___ day of February 2019.

_____
CHRISTOPHER R. COOPER
UNITED STATES DISTRICT JUDGE

B"H

## CERTIFICATE OF SERVICE

**Price v. U.S. Dep't of Justice, et al.**

**Case No. 1:18-CV-01339-CRC**

I, James Price, hereby declare that on this date, January 11, 2019, have served the enclosed:

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION**

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION**

**DECLARATION OF LAWRENCE S. SMITH IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION**

**PROPOSED ORDER**

pursuant to the "Mailbox Rule" for incarcerated persons with the Clerk of Court. All parties noticed for service are served pursuant to D.D.C. LCvR 5.4(b-d).

I hereby declare that under the penalty of perjury, and pursuant to Title 28 U.S.C. § 1746, the foregoing is true and correct.

Executed on January 10, 2019.

By: _____
James Price
USM No. 98922004

B"H

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

### Case No. 1:18-CV-01339-CRC

JAMES PRICE,

     Plaintiff,

v.

UNITED STATES
DEPARTMENT OF JUSTICE,

     and

JEFFERSON B. SESSIONS III,

     and

DAVID S. FERRIERO,

     Defendants.

_____/

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION

**COMES NOW,** James Price ("the Plaintiff"), and files this, his memorandum of points and authorities in support of the Plaintiff's motion for a temporary restraining order, and a preliminary injunction, pursuant to Fed. R. Civ. P. 65 and LCvR 65.1.

[Remainder of page intentionally left blank]

1

## TABLE OF AUTHORITIES

**CASES:**

Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.,
    2017 WL 6314142 at *19 (D.D.C. December 8, 2017)....................13

Amoco Prod. Co. v. Gambell,
    480 U.S. 531, 542 (1997)..............................................17

Berger v. United States,
    295 U.S. 78, 88 (1935)................................................19

*Chaplaincy of Full Gospel Churches v. England,
    454 F.3d 290, 297 (D.C. Cir. 2006)....................................12

Cobel v. Norton,
    391 F.3d 251, 258 (D.C. Cir. 2004)....................................13

*English v. Trump, et al.,
    279 F. Supp. 3d. 307, 315 (D.D.C. January 10, 2018)..................12

Guttenberg v. Emery,
    26 F. Supp. 3d. 88, 102 (D.D.C. 2014)................................17

KMart Corp. v. Cartier, Inc.,
    486 U.S. 281, 291 (1988)..............................................14

*Mylan Labs, Ltd. v. FDA,
    910 F. Supp. 2d. 299, 313 (D.D.C. 2013)..............................15

Nken v. Holder,
    556 U.S. 418, 435 (2009)..............................................17

Pursuing Am.'s Greatness v. FEC,
    831 F.3d 500, 511 (D.C. Cir. 2016)....................................17

Qualls v. Rumsfeld,
    357 F. Supp. 2d. 274, 281 (D.D.C. 2005)..............................13

Sampson v. Murray,
    415 U.S. 61, 88 (1974)................................................12

Sherley v. Sebelius,
    644 F.3d 388, 392-393 (D.C. Cir. 2011)................................13

18 U.S.C. § 2258A ................................................... 10

42 U.S.C. § 5773(b) ................................................. 10

44 U.S.C. § 2901 et seq. ............................................. 5

44 U.S.C. § 3101 et seq. ............................................. 5

44 U.S.C. § 3301 et seq. ..........................................8, 11

44 U.S.C. § 3551 et seq. ......................................5, 11, 13

## REGULATIONS:

36 C.F.R. § 1220.18 ..............................................8, 11

36 C.F.R. § 1222.10 ..............................................8, 11

36 C.F.R. § 1222.12 ..............................................8, 11

## EXECUTIVE ORDERS:

Presidential Memorandum of November 11, 2011, 76 Fed. Reg. 75423 ....... 19

## RULES:

Fed. R. Civ. P. 65 .................................................. 1

Fed. R. Crim. P. 16 ............................................. 7, 12

D.D.C. Local Rule 65.1(d) .......................................... 1

## PUBLICATIONS & STANDARDS:

Federal Information Processing Standard Publication 180-4
    (Secure Hash Standard) ........................................... 5

Federal Information Processing Standard Publication 186-4
    (Digital Signature Standard) ..................................... 5

## OTHER AUTHORITIES:

Office of the Attorney General Memorandum, May 11, 2009 ................. 19

Wikipedia entry: SHA-1, at https://en.wikipedia.org/w/index.php?title=sha-1
&oldid=821039937 (Last visited January 18, 2018) ........................... 9

Wikipedia entry: Digital Signature, at https://en.wikipedia.org/w/index.php?
title=Digital_signature&oldid=826689561 (Last visited February 20, 2018) ..... 9

## I.  INTRODUCTION AND BACKGROUND

1.    This is an action under the Administrative Procedures Act ("APA") [Title 5 U.S.C. § 701 et seq.], and the Federal Records Act ("FRA") [Title 44 U.S.C § 2901 et seq., and § 3101 et seq.] to compel the Archivist and the Attorney General ("AG") to comply with their respective non-discretionary duties to initiate legal action against the Department of Justice ("DOJ") for serial violations of the FRA.[1]  The Defendants implemented a calculated plan to violate the FRA through the knowing and willful use of SaaS-based, Cloud-based, and other non-government owned or operated software and systems to create, remove, and alienate, and caused the creation, removal, and alienation of more than **10 Billion** federal records.

2.    The Defendants' violations of the statutes, and the sheer scope of the removal and alienation of records, came to light through a watchdog investigation organized by the Plaintiff using the Freedom of Information Act ("FOIA") [Title 5 U.S.C. § 552], independent investigators, and the sworn

---

[1]    The Defendants' also deviated from the general prohibition barring federal agencies from accepting monetary donations or "in-kind" donations in a series of memorandums that created exceptions for the use of certain SaaS-based software as an "in-kind" donation.  The Defendants were actively engaged in Federal Information Security Management Act ("FISMA") compliance reviews using the "TrustedAgent" software from Trusted Integration, Inc. The DOJ's "FISMA solution" was a critical part of the DOJ's Cyber Security Assessment Management ("CSAM") program.  The Defendants were aware based on their FISMA review that the SaaS-based and Cloud-based software and systems were **NOT COMPLIANT** with FISMA and therefore, **could not be used** under the statutes [44 U.S.C. §§ 3551-3559].  The Defendants' policy exception to permit the use of non-FISMA compliant software as an "in-kind" donation was a deliberate act to conceal known problems with the systems accuracy, reliability, and the integrity of its data from the FISMA review. The software **DID NOT** meet the minimum standards promulgated under FISMA in the Federal Information Processing Standard ("FIPS") 180-4 Secure Hash Standard ("SHS") [See Exhibit "A"] or FIPS 186-4 Digital Signature Standard ("DSS") [See Exhibit "B"].  In simple terms, the DOJ knew the SaaS-based or Cloud-based software and systems were reporting **fraudulent information.**

statements of the agencies in public court records. Over the course of nearly two (2) years, the Plaintiff personally filed in excess of 100 FOIA requests to agencies across the Executive Branch to probe the agencies' technological operating methods and related financial structures.

3.  The Defendants' responses and statements demonstrated a calculated pattern of not mere deception but actual deceit.  The Defendants routinely sought criminal indictments based on statements known or reasonably known to be false, and in many instances, based on records known to have been removed or alienated from the Defendants' custody, or were simply fabricated. The Plaintiff documented numerous instances that when the Defendants' conduct was at risk of exposure, the Defendants collaborated to **dismiss** the cases to avoid exposure.  See United States v. Hartman, C.D. Ca. Case No. 8:15-CR-00063-JLS (**DISMISSED** on United States motion); United States v. Kimbrell, N.D. Ga. Case No. 1:14-CR-00090-TCB-AJB (**DISMISSED** on United States motion); United States v. Herron, M.D. Fla. Case No. 2:14-CR-00023-SPC-MRM (**DISMISSED** on United States motion); United States v. Ocasio, W.D. Tx. Case No. 3:11-CR-02728-KC (**DISMISSED** on United States motion);[2] United States v. Michaud, W.D. Wa. Case No. 3:15-CR-00531-RJB (**DISMISSED** on United States motion when the district court ordered the production of CLASSIFIED materials in discovery under 18 U.S.C. App. 3); see also United States v. Tummins, M.D. Tn. Case No. 3:10-CR-00009-AAT (**ACQUITTED** at third trial following two mistrials when the SaaS-based software evidence was precluded).

---

[2]  In Ocasio, the United States **dismissed all child pornography counts** based on the information and data from the SaaS-based software when the district court ordered the SaaS-based software turned over to the defense for independent examination.  The United States entered into a plea agreement in exchange for the defendant's "time served in pre-trial detention and a $500 fine" for Transportation of Obscene Materiels, an offense that **does not** fall under SONRA.

4.   When [criminal] defendants moved to compel production of "the records alleged" in the supporting affidavits, indictments, and inspection of the software that created the alleged records, the Defendants dismissed the indictments to avoid exposure of their violations of the law.

5.   The Defendants facilitated these violations through the use of various Software-as-a-Service ("SaaS") and Cloud-based systems operated by a network of non-government organizations funded through various grants made by, or on behalf of, the Defendants. While not charged in the complaint, the financial conduct revealed through the Defendants responses and in the related IRS Form 990s—that alone encompassed more than 400 pages—detailed the Defendants financial deception in the distribution of more than **a quarter of a Billion taxpayer dollars.** The Defendants created a financial artifice to funnel taxpayer funds to non-governmental agencies in a scheme for the organizations to "re-grant" the funds—now out of public view, and less fees and administrative costs—back to the DOJ's programs, partners, affiliates and contract operators. A Department of Justice managed money laundering scheme at the taxpayers expense.

6.   The Defendants devised a stratagem to create federal records "off-book" with the specific intent to thwart FISMA, FRA, FOIA, and to mislead the courts as to the true availability of the records in the SaaS-based and Cloud-based software and systems. The Defendants routinely filed certificates of compliance with Fed. R. Crim. P. 16 that deceived **the courts** and criminal defendants as to the existence of, and the availability of, records alleged as evidence. While this calculated pattern of misconduct [serial <u>Brady</u> violations] was not charged in the Complaint, it is "relevant conduct" for this Court's consideration. See <u>United States v. Theodore</u>

Stevens, D.D.C. Case No. 1:08-CR-00231-EGS, where the court moved sua sponte for **criminal comtempt** charges against the U.S. Attorneys for serial Brady and other violations).

7.    When the Plaintiff sought records the Defendants had previously claimed to "possess" in **public court documents** under FOIA, the Defendants claimed they were unable to locate or produce the records.  Unbeknownst to the Defendants, the Plaintiff worked in coordination with other government agencies and independent investigators to meticulously reverse engineer the Defendants' unlawful operations.  The Plaintiff also organized a coordinated effort involving multiple parties to make recursive requests to "cross-check" the records produced by the Defendants, and the variety of records the Defendants could not locate or produce.  The records the Defendants produced demonstrated not only "bad faith" in their responses, but also confirmed the Defendants were knowingly and willfully operating in violation of the statutes as charged in the complaint [ECF No. 38].  See Declaration of Lawrence S. Smith filed separately at ECF No. __.

## II.  STATEMENT OF FACTS

8.    The Plaintiff coordinated the watchdog investigation, filed and directed the filing, of more than 250 requests for records, documents, information, and data to more than a dozen federal, state, and local agencies—including the Defendants.  These requests targeted specific record types as defined under Title 44 U.S.C. § 3301 and 36 C.F.R. §§ 1220.18, § 1222.10, and § 1222.12.  These records were known to have been created, or caused to be created, using a SaaS-based, Cloud-based or other non-government owned or operated software or systems based on the **sworn affidavits and testimony** the Defendants routinely offered to district courts.

9 .   The Plaintiff obtained copies of internal memorandums, documents, and other communications by and between senior officials of the Defendants that triggered the initial set of requests under FOIA Request No. 17-00209. See ECF No. 13:9-10.   That request targeted a series of emails with attachments sent to the email address icaccasetracker@usdoj.gov.   The Defendants were unable to locate the actual records despite clear instructions from then Associate Attorney General William W. Mercer ("AAG Mercer") that these records must be scrupulously collected, maintained and reported by the 5th day of the month.   AAG Mercer's directive was clear, **no records** were to be deleted and **no case numbers** were to be repeated.   See Exhibit "C".

10.   Specific to cases alleged to involve child pornography, the long held precedent for the identification of both suspected child pornography, often referred to by the term of art as "child notable", and actual (identified victim) child pornography, is a 160-bit Binary (1s and 0s) number known as a Secure Hash Algorithm version 1 ("SHA-1")[3] value.   The actual SHA-1 value produced by the algorithm is used as the basis for the Digital Signature[4] that performs the same function as an analog, i.e., pen and ink,

---

[3]   The layman definition of "SHA-1", a message digest—typically rendered as a Hexadecimal number, **40-digits long**, Wikipedia, last visited January 18, 2018.   See Exhibit "D"

[4]   The layman definition of "Digital Signature", a mathematical scheme for demonstrating the **authenticity** of digital messages **or documents.**   A valid digital signature gives... reason to believe that the message [or file] was created by a known sender... the sender cannot deny having sent the message [known as non-repudiation].   Wikipedia, last visited February 20, 2018.   See Exhibit "E".

signature on physical evidence.[5]   The SHA-1 algorithm[6] was developed as a joint effort between the National Institute of Standards and Technology ("NIST") and the National Security Agency ("NSA").   Due to human limitations in the accurate identification of large Binary values, the NIST standard for representation of a SHA-1 is as a 40-digit Hexadecimal number. The Hexadecimal number format is more "human friendly", and readily recognized by its distinctive "0-9" and "a-f" Base-16 numbering system, that is used by all modern computers.   See Exhibit "D" at 1.

11.   The watchdog investigation targeted several requests for the SHA-1 values **the Defendants** claimed to possess in numerous court documents. Moreover, copies of these SHA-1 values the Defendants claimed to have possessed were **required under the statutes** to be submitted to the National Center for Missing and Exploited Children ("NCMEC") as part of the Child Victim Identification Program ("CVIP").   See 18 U.S.C. § 2258A and 42 U.S.C. § 5773(b).   Therein, under the statutes the Defendants were **required** to have created or received a de minimus number of records: (1) the calculation of a SHA-1 for each file; (2) the request for identification and verification to NCMEC; and (3) the response from NCMEC regarding the SHA-1 values submitted.   The Defendants could not: (1) locate **any** of the records; or (2) produce **any** of the records, despite having obtained multiple convictions on the **same** records.

---

[5]   Critically, the Defendants could not locate or produce **ANY** digital signatures for **ANY** of the alleged child pornography or child pornography related records in **ANY** case... 10s of 1000s of convictions... **ZERO** digital signatures.   The lack of digital signatures on all SaaS-based records was further called into question by the DOJ's regular use of digital signatures on routine documents, e.g. FOIA response letters.   The raison d'etat for FISMA compliance.   See Exhibit "F".

[6]   The full Department of Commerce/NIST official U.S. Government policy regarding SHA-1 is included at Exhibit "A".

12.   The Plaintiff obtained numerous sworn affidavits offered by the Defendants attesting to actions taken and records "made or received by an agency... under Federal Law or in connection with the transaction of public business... as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of the data in them."  See 44 U.S.C. § 3301; see also 36 C.F.R. §§ 1220.18, § 1222.10-1222.12; e.g., all items and forms of records referenced in the affidavits of Special Agents Matthew Fowler, Heath Graves, and Timothy Devine at Exhibits "G", "H", and "I".

13.   The affidavits and other sworn testimony of the Defendants, specifically stated the Defendants were using SaaS-based or Cloud-based software and systems that were operated by non-government owned or operated entities.[7]  See Exhibit "J", <u>United States v. Noden</u>, District of Nebraska Case No. 8:16-CR-00283-LSC, Franks Hearing Tr., February 2, 2017 at 15.

14.   The Defendants were not authorized to use SaaS-based or Cloud-based software or systems that were non-FISMA compliant under the statutes [44 U.S.C. §§ 3551-3559].  The Defendants did not have authorization to remove and alienate federal records from the custody of the agency in violation of the FRA.

---

[7]   In the affidavits, the agents were intentionally vague as to the specific details of the actual records.  The agents claimed to have "observed" and "downloaded" files with graphic and prejudicial names but offered no indica of the factual records in support of their allegations.  In <u>Noden</u>, the agent(s) admitted they **falsely claimed** to have downloaded child pornography, and had **previously falsified other affidavits** in at least two other cases.  In fact,  the agent(s) admitted **NO CHILD PORNOGRAPHY** was downloaded from the defendant.  The actual child pornography submitted to the court was **traded between agents** on a thumb drive using "stock" child pornography from ICAC-TF "media libraries".  The Defendants are bereft of any records of those transfers.

15.   The Defendants' routine certification to district courts of compliance with Fed. R. Crim. P. 16, indicated that all discoverable materials in the care, custody, and control of the United States had been provided to the criminal defendants.   These certifications demonstrated that the Defendants had **knowledge** that the records to which they previously attested, had been removed and alienated from the Defendants' custody.   The Defendants knew the records were removed and alienated because they specifically created them, or caused them to be created, in **unauthorized** SaaS-based or Cloud-based software or systems.   The Defendants' use of these "off-book" systems was a calculated and deliberate violation of the law.

16.   The Defendants believed they were free to engage in such calculated plans of deceit because they alone were charged with the enforcement of the statutes they were violating.   **Quis custodiet ipsos custodes?**

### III.   ARGUMENT

17.   The court has jurisdiction over this matter, and therein may use its equitable powers to entertain and grant motions for preliminary relief.   In considering a plaintiff's request for preliminary injunctive relief, a court must weigh four (4) factors: (1) the party's likelihood to succeed on the merits; (2) the party is likely to suffer irreparable harm—injury in fact—in the absence of preliminary relief; (3) the "balance of equities" must tip in favor of the party; and (4) an injunction would be in the public interest.   See English v. Trump, et al., 279 F. Supp. 3d. 307, 315 (D.D.C. January 10, 2018).   See also Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting Sampson v. Murray, 415 U.S. 61, 88

(1974) holding "the basis for injunctive relief in the federal courts has always been irreparable harm").

18. In cases where "the Government is the opposing party," the Plaintiff "bear[s] the burdens of production and persuasion" when moving for a preliminary injunction. See Qualls v. Rumsfeld, 357 F. Supp. 2d. 274, 281 (D.D.C. 2005) (citing Cobel v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004)). Stated another way, "[a plaintiff's] irreparable harm argument rises and falls with its merits arguments". See Archdiocese of Wash. v. Wash. Metro. Area Transit Auth., 2017 WL 6314142 at *19 (D.D.C. December 8, 2017).

19. Following the Supreme Court's decision in Winter v. NRDC, Inc., 555 U.S. 7, 22 (2008), the D.C. Circuit has suggested—without deciding—that perhaps Winter should be read to abandon the sliding-scale analysis, thus "requiring the Plaintiff to independently demonstrate both a likelihood of success on the merits and irreparable harm." Id. (quoting Sherley v. Sebelius, 644 F.3d 388, 392-393 (D.C. Cir. 2011)). By either the sliding-scale analysis or the more strict Winter standard, the Plaintiff in this case easily meets the threshold showing for both success on the merits and irreparable injury, infra.

## A. LIKELIHOOD OF SUCCESS ON THE MERITS

20. The Plaintiff is likely to succeed on the merits of the claims in Count 1, Count 2, and Count 4—the FRA related claims of the Complaint—based on: (1) the Defendants' clear and uncontested violations of the FRA statutes; (2) the Defendants' clear and uncontested violation of the Federal Information Security Management Act [Title 44 U.S.C. §§ 3551-3559]; and (3)

the Defendants' failure to present any defense, thus conceding the well-pleaded claims. When "ascertaining the plain meaning of a statute, the Court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." See United States v. Sunia, 643 F. Supp. 2d. 51, 62 (D.D.C. 2009) (quoting KMart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988)).

21.  The Defendants' deflections of guilt in this matter were limited to a post-hoc challenge to this Court's subject matter jurisdiction, and vague claims that they "lack the knowledge and information to form a belief as to the truth". The latter argument is supported in the record by the Defendants' casual and fleeting relationship with actual truth. This court has **deferred** any decision on the Plaintiff's Motion to Compel Jurisdictional Discovery [ECF No. 43].[10]

22.  The facts of this case demonstrate: (1) the Defendants admitted the flagrant use of SaaS-based or Cloud-based software and services that were non-government owned or operated; (2) the Defendants admitted they accepted these software and services as monetary donations or "in-kind" gifts as part of self-serving exceptions to the Defendants' policies on ethical conduct, regulations and statutes barring federal agencies from such conduct;

---

[10]   Given the determinative nature of the Defendants' jurisdictional challenge to this Court reaching the merits, the Plaintiff **renews** his Motion to Compel Jurisdictional Discovery.

(3) the Defendants' conduct was in violation of the statutes; and (4) the Defendants' sole claimed subject matter jurisdiction defense is meritless and should be denied on its face. Likewise, the Defendants' claims that they lack knowledge of the truth is meritless, and an affront to the integrity of this Court. These facts are clear, compelling, and undisputed.

## B. IRREPARABLE HARM

23. The courts evaluation of irreparable injury is based on four (4) factors, the alleged injury must be: (1) certain; (2) great; (3) actual; and (4) imminent. The Plaintiff must demonstrate a threshold showing on all four factors to demonstrate irreparable harm. See Mylan Labs, Ltd. v. FDA, 910 F. Supp. 2d. 299, 313 (D.D.C. 2013) (citing Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985)).

24. The Plaintiff's injury is **CERTAIN** where the Defendants' use of non-government owned or operated SaaS-based, Cloud-based, and other substantially similar software or components unlawfully caused the **removal and alienation** of federal records. These records, once removed from federal custody, are no longer available or accessible to the Plaintiff under FOIA/PA. See Defendants' Status Report ECF No. 33:¶3, and Response from NCMEC's litigation counsel at Exhibit "K".

25. The Plaintiff's injury is **GREAT** where the admission by **one** of the Defendants' SaaS-based or Cloud-based providers, acknowledged more than **10 Billion** records have already been removed from federal custody by the Defendants through **a single program**. See statement from Child Rescue Coalition, Inc. ("CRC") website and CRC's pleading on behalf of the Defendants at Exhibits "L" and "M". The more than **10 Billion** records

15

described in CRC's pleading included only **one** of many programs operated by the Defendants, or on behalf of the Defendants, by their officers, agents, partners, affiliates, program participants, and other contract operators.

26.   The Plaintiff's injury is **ACTUAL** where the removal and alienation of records precluded the Defendants from certifying the integrity of federal records, a non-discretionary duty under the FRA or the production of records under FOIA.   The Defendants stated they were "unable to locate [the associated] responsive records" even when provided with the agency's own case numbers.   See Defendants' response to FOIA 17-00209 [ECF No. 13:13]. The Plaintiff and others have numerous pending requests.   The Defendants' removal and alienation actions led to the **commingling** of federal records with quasi-federal records where the subsequent segregation of the records is all but impossible.   Critically, the records were removed and alienated to a non-government entity that **lacks a records retentions policy** approved by the Archivist.   The alienated records are currently subject to **destruction** at the whim of a private entity.[11]

27.   The Plaintiff's injury is **IMMINENT** where every day the Defendants, by and through, their officers, agents, partners, affiliates, program participants, and other contract operators use of SaaS-based, Cloud-based systems and other substantially similar software or components causes: (1) the creation; (2) the removal; and (3) the alienation of federal records.

---

[11]   TLO, LLC. (CRC's predecessor) declared bankruptcy in 2013 following the death of its founder Hank Asher.   A review of CRC's current financial statements indicates the private entity is all but insolvent—with a negative operating balance—but for multiple large "no interest" cash loans from corporate officers.   The private entity has been unable manage or raise the necessary funding for self-sustaining operations.

These records are the **key records** alleged and relied upon by the Defendants to support agency actions, expenditures, criminal proceedings, and constitute the Public's receipts for the Defendants expenditure of taxpayer funds, e.g., operations, authorization funding, grants, reimbursements, etc. A delay in **GRANTING** relief in this matter translates to the **additional** removal and alienation of approximately **83.3 Million records per MONTH.**

28.   There is **no mechanism**, i.e., "no adequate compensatory or other corrective relief... " to protect the Plaintiff **other than** a temporary injunction. See Guttenberg v. Emery, 26 F. Supp. 3d. 88, 102 (D.D.C. 2014) (quoting Wis. Gas Co., 758 F.2d at 674). Thus, the irreparable injury—the harm—to the Plaintiff is: (1) certain; (2) great; (3) actual; and (4) imminent.

## C.   THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST

29.   The courts "must balance the competing claims of injury and consider the effect on each party of granting or withholding of the requested relief." See Winter, 555 U.S. at 24 (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987)). Additionally, courts should "[also] pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Id. (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)). These two considerations merge into the same factor when the government is the non-movant. See Nken v. Holder, 556 U.S. 418, 435 (2009); see also Pursuing Am.'s Greatness v. FEC, 831 F.3d 500, 511 (D.C. Cir. 2016) (holding the government's "harm and the public interest are one and the same, because the government's interest is [ideally] the public interest."). The key element in this factor is in whose favor the balance tips.

30.   The Plaintiff's interest is in his **right**, and the right of the public under the statutes, to inspect records, documents, information, and data that were created, collected, and required to be preserved under the law.   In fact, in this case the Plaintiff's interest **IS** the public interest in the preservation, integrity, and availability of federal records.   Once information and records are collected, the Defendants are required to preserve the integrity of those records, and to make those records available for public inspection under the statutes.   In contradistinction, the Defendants' only interest in this case has been to violate the law and to collaborate in the concealment of their misconduct.

31.   In United States v. Grow, S.D. Fla. Case No. 0:16-CR-20893-FAM, the Defendants made a clear—if Freudian—statement that demonstrated their disregard for the truth, and the Defendants' fundamental lack of integrity:

> DEFENSE COUNSEL:  Objection, Your Honor, hearsay.
> THE COURT:  Sustained.  You can't tell us what she said.
> AUSA:  It was an offer, Your Honor.
> THE COURT:  Pardon?  I'm sorry?
> AUSA:  It was an 'offer.'  It's not offered **for the truth.**
> THE COURT:  Are you seeking the truth here?
> AUSA:  **I AM NOT.**
> THE COURT:  You are not seeking the truth in this case?
> AUSA:  **NO.**
> THE COURT:  You don't really want to say that, do you?
> AUSA:  Well... [that's the truth].

Jury Trial Tr., January 25, 2018 at 12.

32.   The Defendants set out to violate the statutes, and in so doing they collaborated to create, collect, remove, and alienate records from federal custody with the specific intent to prevent those records from being accessible to the public, including criminal defendants.   The Defendants further collaborated in the willful defiance of a **Presidential directive** that ordered them to review programs for compliance with the laws and regulations, and to insure deficient programs were made compliant.   The Defendants knew they were violating the law, and instead made calculated and coordinated decisions to **continue to violate the law** and to conceal their actions from the public.   See Presidential Memorandum of November 28, 2011 at 76 Fed. Reg. 75423.

33.   Despite the Attorney General's own statements to the contrary, the Defendants' have acted as little more than partisans, placing the pursuit of convictions—winning at all costs—before justice.   Put simply, the Defendants' own records demonstrated they were willing—and in fact actually—sacrificed the 10 percent the Defendants **knew to be innocent**, for the sake of convicting the 90 percent they believed to be guilty.   The Defendants' knowingly and willfully disregarded the rule of law and the Court's long held precedent in <u>Berger v. United States</u>, 295 U.S. 78, 88 (1935) (holding [the Defendants obligation] "is not that it should win a case, but that **justice shall be done**") (emphasis added).   See Attorney General's Memorandum, Exhibit "N" at 1(a).

## D.   TRUTH AND CONSEQUENCES: THE EFFECTS OF AN INJUNCTION

34.   The Defendants position that the efficient operation of the agencies required the use of SaaS-based or Cloud-based software or systems in a manner that **violated the statutes** is meritless.  Likewise, any assertions by the Defendants that the prosecution of crimes involving child pornography required the use of processes that violated the law, is simply **false.**  The Defendants **CHOSE** to violate the law despite readily available options and opportunities to conduct the same investigations and operations resulting in the same prosecutions **in compliance with the law.**  The Defendants presumptive argument that the use of SaaS-based or Cloud-based systems or substantially similar software or components in a manner that violated the law was or is necessary to the successful interdiction of drug crimes, financial crimes, crimes against children, or any other type of crime is equally self-serving and false.

## IV.   REQUEST FOR ORAL HEARING

35.   The Plaintiff respectfully requests this Court set a hearing for oral arguments in this matter at its earliest convenience.  The Plaintiff asserts that a hearing in this matter is necessary due to the complex factual and legal issues in this matter.  Oral arguments on this motion will be beneficial and facilitate an accurate analysis of the technical issues and the legal framework that underlie this case.  The time necessary for a hearing will be determined in part by the witness testimony presented by parties.

## V.   CONCLUSION

36. The Defendants' justifications for their illegal conduct are analogous to a drug dealer's supposition that he should be allowed to leverage the illicit proceeds of his crimes to fund his defense.   Put another way, the Defendants' collectivist ethic holds the ends justified the means.   The Defendants in this case operate as little more than a knowing and willful cartel who made conscious, coordinated decisions to act in clear violation of the statutes.

37. The Plaintiff's interest and the public interest are in the **lawful operation of government.**   The Plaintiff and the public have a **lawful right** to the records this injunction seeks to protect, and a reasonable expectation that the Defendants charged with enforcing the law, will also demonstrate the integrity of strict adherence to those same laws.   The relief sought by the Plaintiff **DOES NOT** stop the Defendants from conducting **lawful operations**, it merely enjoins the Defendants from the **UNLAWFUL** use of systems designed to thwart the law.

**WHEREFORE,** in view of the foregoing statement of points and authorities, the Plaintiff respectfully moves this Court for entry of an Order to:

1.  **ENJOIN** the Defendants from the use of any SaaS-based, Cloud-based, or other non-government owned or operated system, or substantially similar software or components that remove, alienate, or causes the removal or alienation of records from the Defendants' custody;

2.  **ENJOIN** the Defendants from the use of any software or systems that are not currently compliant with the standards set forth in FISMA and the related statutes;

3.  **DIRECT** the Defendants to seize, secure, or otherwise **preserve the status quo** of all records removed from the Defendants' custody to prevent the destruction of removed or alienated records.

Respectfully Submitted,

_____
James Price
Plaintiff
USM No. 98922004
Federal Correctional Institution
P.O. Box 779800
Miami, Florida 33177-9800
Tel.: 305-259-2150/2268
Fax: 305-259-2383
Email: PriceJamesE@Outlook.com

B"H

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

### Case No. 1:18-CV-01339-CRC

JAMES PRICE,

    Plaintiff,

v.

UNITED STATES
DEPARTMENT OF JUSTICE,

    and

JEFFERSON B. SESSIONS III,

    and

DAVID S. FERRIERO,

    Defendants.

_____/

## DECLARATION OF LAWRENCE S. SMITH IN SUPPORT OF THE PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION

**COMES NOW,** James Price ("the Plaintiff"), and files this, the Declaration of Lawrence S. Smith in Support of the Plaintiff's Motion for a Temporary Restraining Order, and Preliminary Injunction.

I, LAWRENCE S. SMITH, HEREBY DECLARE:

1.   My name is Lawrence S. Smith, I am over the age of eighteen (18), and I am otherwise competent to make this declaration.

1

2.   This Declaration is based on my personal knowledge, and if called upon by this Court, my sworn testimony that the **facts** stated herein are true, accurate, and correct.

3.   I am a convicted felon, currently serving two (2) terms of imprisonment of 300 months, three (3) terms of 120 months, and one (1) term of 60 months—concurrent—for violations of 18 U.S.C §§ 1028(a)(7), § 1029(a)(3), § 1341, § 1342, § 1344, § 1952(a)(1)(B)(i), § 1956(a)(2), and § 1957.

4.   I pleaded guilty to the aforementioned offenses, because I was guilty.  As an adult and a career criminal, I was aware that my actions were in violation of the law, and like the Defendants charged in this case, made the knowing and willful **decision** to violate the law.

5.   On March 7, 2017, I filed a Freedom of Information Act ("FOIA") request as part of a watchdog investigation of the Defendants in this case. The FOIA request sought "an index of the Case Tracking Reports... **from the establishment of the ICAC Task Force Program**."  Additionally, the request sought the Monthly Performance Measures Reports for the Central and South Florida ICAC Task Force Programs from the establishment of the programs.

6.   The Request was received by the Office of Justice Programs ("OJP") on March 13, 2017 and assigned the request tracking number OJP FOIA No. 17-00170.  In OJP's letter the agency claimed the request fell under "unusual circumstances".

7.   On June 16, 2017, OJP responded to the request by producing twenty-six (26) pages of information, with excisions claimed under the exemption defined in 5 U.S.C. § 552(b)(6).

8.   On August 1, 2017, I administratively appealed OJP's decision to the Office of Information Policy ("OIP"). The administrative appeal was assigned the tracking number DOJ-AP-2017-006378. The appeal was denied on review by OIP on October 3, 2017.

9.   On May 5, 2017, the Plaintiff in this action filed a similar FOIA request **but the records sought in that request were limited to an eleven (11) month period.** The Defendants responded to the Plaintiff with **the same twenty-six (26) pages.**

10.   Later the Plaintiff filed another FOIA request which sought records matching a **single case** identified by the specific record identifier. The Defendants responded with more than **nine hundred (900) records.** The records produced by the Defendants included records the Defendants **previously claimed to your Declarant** were nonexistent.

11.   The actions and conduct of the Defendants in this case have demonstrated "bad faith" in repeated and deliberate acts to violate the statutes.

[Remainder of page left intentionally blank]

3

12.   I,   Lawrence   S.   Smith,   hereby   declare,   under   the   penalty   of
perjury,   and   pursuant   to   Title   28   U.S.C.   § 1746,   the   foregoing   is   true   and
correct.

FURTHER THE DECLARANT SAYETH NAUGHT.

Executed on January 10, 2019.

By: _____

Lawrence S. Smith
Declarant
USM No. 43474019

Respectfully Submitted,

_____

James Price
Plaintiff
USM No. 98922004
Federal Correctional Institution
P.O. Box 779800
Miami, Florida 33177-9800
Tel.: 305-259-2150/2268
Email: PriceJamesE@Outlook.com

4