UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES PRICE, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 18-1339 (CRC) <br> ) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) <br> ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

## **DEFENDANT'S RESPONSE TO PLAINTIFF'S MARCH 17, 2020 RESPONSE**

In this Freedom of Information Act ("FOIA") action, *pro se* prisoner Plaintiff sought "any and all reports, documentation, and data by the Internet Crimes Against Children . . . Task Force for case number 11–17890" ("Plaintiff's first FOIA request" or "first request") to the Office of Juvenile Justice and Delinquency Prevention ("OJJDP") of the Office of Justice Program ("OJP") of the Department of Justice ("DOJ"). (Plaintiff's Amended Complaint).

As detailed in Defendant's dispositive motion, Defendant and its sub-components, OJP and the Criminal Division, satisfied their obligations to conduct adequate searches for records responsive to Plaintiff's FOIA requests and properly withheld exempt information pursuant to applicable FOIA Exemptions 2, 6, 7(C), 7(E), and 7(F).

In response, Plaintiff's Response ("Pl.'s Response.") (ECF No. 85) challenges Defendant's search and exemptions. Defendants' respond to Plaintiff's unavailing arguments as follows:

*First*, Plaintiff continues to inaccurately argue that OJP is somehow violating the Federal Records Act. (Pl.'s Response at 3, 17-18 ¶ 32). Not so. Here, OJP did not have records responsive to Plaintiff's multiple requests concerning SHA-1 values. OJP, as a grant-making entity and not

an operational agency does not routinely collect case specific details, including SHA-1 values, and certainly not to maintain evidence for a local criminal case in Florida. Accordingly, Price has not met his burden to prove this failure to collect SHA-1 values is a violation of the Federal Records Act.

*Second*, Price argues that the declaration supporting the government's summary judgment motion in *Debrew* failed because it did not identify particular employees who performed a search and why they were chosen. (Pl.'s Response at 5). The actual reason, however, in *Debrew* that a declaration was held insufficient to support summary motion was because it was not sufficiently detailed and did not disclose the search terms used and the type of search performed. Price misstates the holding in *DeBrew v. Atwood,* and his description of the case is misleading. In *Debrew*, the supplemental declaration filed by the agency stated that the request "was assigned to two employees of the BoP and describes why they were chosen to conduct the search." *Id.* In contrast, Defendants' search terms and the search process for Price's requests were described in Defendants' detailed declarations.

In addition, Price misapplies *Weisberg v. DOJ*, 627 F.2d 365 (D.C. Cir. 1980). In *Weisberg,* the declarant did not assert personal knowledge over whether evidence had been destroyed, but instead stated what he believed destruction *likely* occurred, and thus the Court found a "permissible inference [for summary judgment purposes] . . . that [the declarant] [was] incorrect in his belief." *Weisberg*, 627 F.2d at 369. Because a factual questioned remained as to whether the declarant's belief was correct, the Court held that summary judgment was not appropriate. Unlike *Weisberg*, the personal knowledge of a declarant is not at issue in this case.

*Third*, Plaintiff complains that OJP should have released reports described in a 2007 Mercer Memorandum. (Pl.'s Response at 6 ¶ 11). Plaintiff is wrong. Here, the various local

Internet Crimes Against Children ("ICAC") Task Forces have not been sending the reports described in the Mercer Memorandum, and OJJDP has not been collecting them. OJP is therefore not in possession of the records sought by Price concerning this 2007 Mercer Memorandum.

Moreover, the 2007 Mercer memorandum is not statutory law as Plaintiff incorrectly argues. (Pl.'s Response at 19 ¶ 35). Indeed, the reporting burden of the reports created by the 2007 Mercer Memorandum was found to outweigh their usefulness, and again, OJP does not collect these reports and the ICAC task forces[1] do not send them. OJP therefore does not have (other than what has already been sent to him) additional records for Price.

*Fourth*, Price now claims he has confidential informants in the Criminal Division. He also claims he received "advance copies of internal documents and intelligence on agency operations." (Pl.'s Response at 7). In addition, Price refers to information he obtained through "clandestine photographs" that was provided to him through a "confidential informant." (Pl.'s Response at 14, Footnote). He also refers to "highly specific, internal information from the DOJ." In this footnote, he additionally states that non-public information about the DOJ is available on the Dark Web.

---

[1]   Funds have been appropriated to fund the ICAC program, which is awarded to various local ICAC task forces around the country, but not necessarily the ICAC Data System Steering Committee. The appropriations legislation passed by Congress does not specify that funding should go to this committee. *See* Protect Our Children Act 2008.

Moreover, the ICAC Task Force Program funding is supported under the "for missing and exploited children" appropriation language included in the Department of Justice fiscal year appropriation. *See*, *e.g.*, ICAC's fiscal year 2020 funding in the Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, 133 Stat. 2317, 2410, appropriating $87.5 million "for missing and exploited children programs"; *see also* www.icactaskforce.org. There has not been any recent appropriation for the committee cited by Price. OJP also did not locate any records related to this committee.

(*Id.*).  Notwithstanding Price's beliefs and innuendo, his presentation on this front is not a justification for Defendants to be compelled to release records.

*Fifth*, Price claims that OJP should not have redacted information that would take "less than 300 seconds" to find through Google. (Pl.'s Response at 13 ¶ 21).  Not so.  Here, the ability to find information on the Internet does not factor into OJP's responsibility to withhold, pursuant to FOIA, information about law enforcement personnel.

*Sixth*, Plaintiff complains that the Criminal Division should have searched for "ERB records."  (Pl.'s Response at 9 ¶ 14).  Plaintiff again is wrong.  Here, DOJ FOIA regulation Section 16.4  Responsibility for responding to requests. (c) *Re-routing of misdirected requests* states, "Where a component's FOIA office determines that a request was misdirected within the Department, the receiving component's FOIA office shall route the request to the FOIA office of the proper component(s)."  Portions of Price's request specifically ask for Child Exploitation and Obscenity Section ("CEOS"), and its sub-component, the High Technology Investigative Unit ("HTIU") records, and pursuant to regulation, OJP was required to route the request to Criminal because CEOS sits within the Criminal Division, but routing does not suggest that the component has records.  It is only evidence of OJP's compliance with DOJ's regulations.

Moreover, a search for records has been found unnecessary when it was supported by an agency attestation that a person familiar with the records maintained by the agency had determined that no responsive records were, in fact, maintained. *See* ECF No. 83, Declaration of Christina Butler ("Butler Decl.") p. 2 Ft. 2); *see also Espino v. DOJ*, 869 F. Supp. 2d 25, 28 (D.D.C. 2012) (upholding agency's action in not searching for records when agency declarations stated that agency did not maintain requested records); *Thomas v. Comptroller of the Currency*, 684 F. Supp. 2d 29, 33 (D.D.C. 2010) (affirming agency's decision not to search when it determined that given

its system of records, "there was no reasonable expectation of finding responsive documents"); *American-Arab Anti-Discrimination Comm. v. DHS*, 516 F. Supp. 2d 83, 87-88 (D.D.C. 2007) (finding sufficient agency's statement that it "does not maintain [requested] information" and ruling search "unnecessary" since affiant spoke to several ICE agents and as "Deputy Assistant Secretary for Operations, . . . [was] presumed able to familiarize himself with what statistics ICE does and does not maintain").

Ultimately, Plaintiff's response fails to create any barrier to disposing of this case in Defendant's favor. For the foregoing reasons and those set forth in Defendant's opening papers, the Court should grant Defendant summary judgment.

Dated: March 30, 2020         Respectfully submitted,

TIMOTHY J. SHEA, D.C. Bar #437437
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

     /s/
RHONDA L. CAMPBELL, D.C. Bar No. 462402
Assistant United States Attorneys
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2559
Rhonda.campbell@usdoj.gov

*Counsel for United States*

- 6 -

CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that service of the foregoing Defendant's Response has been made by U.S. Mail during the week of March 30, 2020, to:

JAMES PRICE
R98922-004
MIAMI
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 779800
MIAMI, FL 33177

*Plaintiff*

/s/
Rhonda L. Campbell
Assistant United States Attorney