UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMES PRICE,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT<br>OF JUSTICE, *et al.*,<br><br>    Defendants. | Civil Action No. 18-1339 (CRC) |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

This case involves ten Freedom of Information Act ("FOIA") requests submitted by Plaintiff to Defendant United States Department of Justice ("DOJ").[4]  With respect to the remaining FOIA claims at issue, DOJ undertook appropriate efforts to search for and provide all reasonably segregable records, and has withheld only information that is properly exempt from release under 5 U.S.C. §§ 552 (b)(2), (b)(6), (b)(7)(C) and (b)(7)(E).  As explained herein, in the attached Statement of Facts, the second declaration of Monica Potter-Johnson ("Potter 2nd Decl."), the supplemental declaration of Christina Butler ("Butler Suppl. Decl."), and the attached *Vaughn* Indices, no questions of material fact remain, and DOJ is entitled to judgment as a matter of law with respect to the remaining FOIA claims.

---

[4] Plaintiff's Count 1 and Count 2 brought under the Administrative Procedure Act ("APA") and Federal Records Act ("FRA") against DOJ and the National Archives and Records Administration will be addressed in a separate motion for summary judgment to be filed on November 20, 2020.

**STATEMENT OF FACTS**

As noted above, this FOIA lawsuit involves ten requests submitted by Plaintiff to DOJ. The requests in question were processed by two DOJ components – the Criminal Division and the Office of Justice Programs ("OJP"). On July 14, 2020, this Court denied in part DOJ's Motion for Summary Judgment with respect to the adequacy of the search for OJP's requests Nos. 18-00059, 18-00156, 18-00157, 18-00136, 18-00150, and 18-00288. This Court also denied in part DOJ's Motion for Summary Judgment with respect to all of OJP's redactions, and the Criminal Division's redactions made pursuant to FOIA Exemption 2.[5]

DOJ hereby incorporates the Statement of Material Facts Not in Genuine Dispute and the declarations and exhibits referenced therein, filed contemporaneously with this Memorandum, along with the first declaration of Monica Potter-Johnson ("Potter Decl")(Dkt. No. 74-3), the first declaration of Christina ("Butler Decl.")(Dkt. No. 83-1), and the declaration of Amanda Marchard Jones ("Jones Decl.") (Dkt. No. 89-1), to support the adequacy of OJP's searches and its redactions, and to support the Criminal Division's redactions made pursuant to FOIA Exemption 2.

**LEGAL STANDARD**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate

---

[5] The Court granted in part DOJ's Motion for Partial Summary Judgment with respect to the adequacy of the searches for OJP's Requests Nos. 17-00209, 18-00260, and 18-00294; the adequacy of the search of the Criminal Division's request and the Criminal Division's withholdings made pursuant to FOIA Exemptions 6, 7(C), 7(E), and 7(F).

an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016), *aff'd*, 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)). A defendant is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, that it has conducted an adequate search for responsive records, and that each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See, e.g., Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See, e.g., McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Santana v. Dep't of Justice*, 828 F. Supp. 2d 204, 208 (D.D.C. 2011); *Allen v. U.S. Secret Serv.*, 335 F. Supp. 2d 95, 97 (D.D.C. 2004).

## ARGUMENT

### I. OJP CONDUCTED REASONABLE AND ADEQUATE SEARCHES FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUESTS

Under FOIA, an agency is obligated to conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."); *Media Research Ctr. v. Dep't of Justice*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011). A reasonable search is one that covers those locations where responsive records are likely to be located. *Oglesby*, 920

F.2d at 68.  To satisfy its obligation, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id*.

Where an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004).  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive documents are likely to be located in a particular place.  *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978).  Nor does the FOIA require that an agency search every record system.  *Oglesby*, 920 F.2d at 68.  The process of conducting an adequate search for documents requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and it is "hardly an area in which the courts should attempt to micromanage the executive branch." *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

Here, the Court ordered OJP to provide a fuller explanation of its searches with respect to six of Plaintiff's requests.

<u>Request No. 18-00059</u>

On November 8, 2017, OJP acknowledged receipt of Plaintiff's request that sought, among other things, the Internet Crimes Against Children – Task Force ("ICAC-TF") Operations Manual.  Potter 2nd Decl. ¶ 5; *see also* Dkt. No. 74-3 at ¶ 5.  Following receipt of Plaintiff's request, a

search letter was sent to the Office of Juvenile Justice and Delinquency Prevention ("OJJDP"), which administers the Internet Crimes Against Children ("ICAC") program. Dkt. No. 74-3 at ¶¶ 15-16. OJJDP indicates that no search was conducted because it does not maintain such record and accordingly there would have been no expectation of finding the requested document. Potter 2nd Decl. ¶ 5. The OJJDP program manager, who works on the ICAC program, consulted with OJJDP program manager's supervisor - a subject matter expert who has historical knowledge of the ICAC program, and is the lead for the ICAC programs; OJJPD program manager supervisor confirmed that he was not aware of any document titled "ICAC-TF Operations Manual." *Id.* Based on their experience and knowledge in working with the ICAC program, the OJJDP program manager and her supervisor were in a position to determine that there was no reasonable expectation of locating a document that they, as subject matter experts, knew that OJJDP does not maintain. *Id.*

As is the case here, a search for records has been found unnecessary when the agency provides a declaration by a person familiar with the records maintained by the agency who determines that no responsive records were, in fact maintained. *See* Dkt. No. 74-3 at ¶ 1; *see also Espino v. DOJ,* 869 F. Supp. 2d 25, 28 (D.D.C. 2012) (upholding agency's action in not searching for records when agency declaration stated that agency did not maintain requested records); *Thomas v. Comptroller of the Currency*, 684 F. Supp. 2d 29, 33 (D.D.C. 2010) (affirming agency's decision not to search when it determined that given its system of records "there was no reasonable expectation of finding responsive documents"); *American-Arab Anti-Discrimination Comm. v. Dep't of Homeland Security*, 516 F. Supp. 2d 83, 87-88 (D.D.C. 2007) (finding sufficient agency's statement that it "does not maintain [requested] information" and ruling search "unnecessary"

since affiant spoke to several ICE agents and as "Deputy Assistant Secretary for Operations, . . . [was] presumed able to familiarize himself with what statistics ICE does and does not maintain").

Request No. 18-00156

On February 15, 2018, OJP acknowledged receipt of Plaintiff's request that sought information regarding Secure Hash Algorithm version 1 ("SHA-1") values.  Potter 2nd Decl. ¶ 8; *see also* Dkt. No. 74-3 at ¶ 8.  Upon receipt of Plaintiff's request, a search letter was then sent to OJJDP.  Dkt. No. 74-3 at ¶ 19.  OJP is a grant-making entity, not an operational agency; OJP does not routinely collect case specific details, including SHA-1 values, and does not maintain evidence for local criminal cases.[6]  The Deputy Associate Administrator of OJJDP confirmed that OJJDP does not collect hash values of any type from anyone or any entity, and accordingly there was no reasonable expectation of finding documents responsive to Request No. 18-00156.  Potter 2nd Decl. ¶ 8; *see also* Ex. D, OJP *Vaughn* Index.  Accordingly, a search for records was deemed unnecessary.  *See Espino,* 869 F. Supp. 2d at 28; *Thomas*, 684 F. Supp. 2d at 33; *American-Arab Anti-Discrimination Comm.,* 516 F. Supp. 2d at 87-88.

Request No. 18-00157

On February 15, 2018, OJP acknowledged receipt of Plaintiff's request that sought copies of all case tracking reports for South Florida ICAC Task Force Case No. LC-10-12-141.  *See* Ex. D, OJP *Vaughn* Index; *see also* Dkt. No. 74-3 at ¶ 9.  A search letter was then sent to OJJDP.  Dkt. No. 74-3 at ¶ 20.  OJJPD explains that case numbers are not a data field in the case tracking reports;

---

[6] OJP provides federal leadership, grants, training, technical assistance and other resources to improve the nation's capacity to prevent and reduce crime, assist victims and enhance the rule of law by strengthening the criminal and juvenile justice systems.  Its six program offices support state and local crime-fighting efforts, fund thousands of victim service programs, help communities manage sex offenders, address the needs of youth in the system and children in danger, and provide vital research and data.  https://www.ojp.gov/about

case numbers are not issued or maintained by OJJPD. Potter 2nd Decl. ¶ 9. OJJPD explains that it conducted a search by using broader terms, such as "CaseTracker," "Case Tracker," and "Case Tracking Report," and by doing so would have captured the particular case sought by Price if it were in OJJDP's records. *Id.* OJJPD searched and provided the relevant reports for the South Florida ICAC program; OJJPD located 100 pages of records responsive to this request and provided the responsive records to Plaintiff withholding some information pursuant to FOIA Exemption 6. *Id.; see also* Ex. D, OJP *Vaughn* Index. Subsequently, records for this request have been reprocessed to reveal information pertaining to Plaintiff. *Id.,* Ex. C.

Request No. 18-00136

On January 24, 2018, OJP acknowledged receipt of Plaintiff's request seeking a chart of accounts for all of OJP ICAC accounts and the total expenditures of OJP for FY08 – FY17. *See* Ex. D, OJP *Vaughn* Index; *see also* Dkt. No. 74-3 at ¶ 6. A search letter was sent to the Office of the Chief Financial Officer ("OCFO"). Dkt. No. 74-3 at ¶ 17. OJP explains that an OCFO employee used the recordkeeping system known as Enterprise Information Gateway ("EIG") to identify details associated with the ICAC program. Potter 2nd Decl. ¶ 6. The OCFO employee then used OJP's financial system of records, FMIS2, to manually locate and download the general ledger chart of accounts associated with ICAC. *Id.* The OCFO employee also searched the shared network drive directories for the financial statements for fiscal years 2008 through 2017. *Id.* The OCFO then used the program code "MC"[7] to pull the financial data and "Internet Crimes Against Children" in the project title field for the fiscal years requested. *Id.* OJP located two responsive

---

[7] "MC" stands for "missing children" as the ICAC program is supported under the Missing and Exploited Children appropriation included in the Department of Justice fiscal year appropriation.

documents, consisting of 25 pages, which were released in full to Plaintiff.  *See* Ex. D, OJP *Vaughn* Index.

Request No. 18-00150

On February 8, 2018, OJP acknowledged receipt of Plaintiff's request seeking a copy of the names, titles, organizations, and terms of service for the current and past members of the National Internet Crimes Against Children Data Systems Steering Committee.  *See* Ex. D, OJP *Vaughn* Index; *see also* Dkt. No. 74-3 at ¶ 7.  A search letter was sent to OJJDP; an initial search located no responsive records.  Dkt. No. 74-3 at ¶¶ 18, 26.  OJJDP's Deputy Administrator, a subject matter expert on the ICAC program, searched his emails, the network drive and paper records.  Potter 2nd Decl. ¶ 7.  The search terms used were: "National Internet Crimes Against Children Data System," "Internet Crimes Against Children Data System," "NIDS," and "Hakes." *Id.*  OJP explains that the term "Hakes" was used because Francey Hakes was formerly the National Coordinator for Child Exploitation Prevention and Interdiction with the Office of the Deputy Attorney General.  *Id.*  Subsequently an additional search was conducted of an archived email folder belonging to a former OJJDP employee and located one responsive email with an attachment that is being released to Plaintiff now with some information redacted pursuant to FOIA Exemptions 6 and 7(C).  *Id,* Ex. B.

Request No. 18-00288

On June 5, 2018, OJP acknowledged receipt of Plaintiff's request that sought copies of "Memorandum of Understanding" ("MOU") executed between OJJDP and various state and federal agencies, and copies of the "Operational and Investigative Standards" of the National ICAC Task Force Program.  *See* Ex. D, OJP *Vaughn* Index; *see also* Dkt. No. 74-3 at ¶ 11.  A search letter was sent to OJJDP. Dkt. No. 74-3 at ¶ 22.  OJP explains that OJJDP subject matter

8

expert stated that OJJDP does not enter into MOUs with state and federal agencies with respect to ICAC work and accordingly there is no reasonable expectation of locating such records. Potter 2nd Decl. ¶ 10. OJJDP located 17 pages of records responsive to the portion of the request seeking "Operational and Investigative Standards" of the National ICAC Task Force Program. *See* Ex. D, OJP *Vaughn* Index. Those records were released in part to Plaintiff, some information withheld pursuant to FOIA Exemption 7(E). *See* Ex. D, OJP *Vaughn* Index; *see also* Dkt. No. 74-3 at ¶ 31.

Based on the above, it is clear that OJP has shown that "it made a good faith effort to conduct a search for the requested records, using the methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990). Because "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate," it is clear that OJP has demonstrated that its search was adequate. *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

As OJP has satisfied its burden of demonstrating that it conducted a "reasonable" search in response to the requests submitted by Plaintiff, OJP is entitled to summary judgment as to the adequacy of its searches regarding the requests at issue. *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) ("[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request.").

## II. DOJ PROPERLY INVOKED FOIA EXEMPTIONS 2, 6, 7(C) AND 7(E)

FOIA does not allow the public to have unfettered access to government files. *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements.

*Dep't of Def. v. Fed. Labor Relations Auth. ("FLRA")*, 510 U.S. 487, 494 (1994). FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions. *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

### A. The Criminal Division correctly applied FOIA Exemption 2

The Criminal Division relied on FOIA Exemption 2 to withhold portions of one document – Document No. 5. Butler Supp. Decl. ¶ 7; Jones Decl. ¶ 33a-f (Dkt. No. 89-1). Exemption 2 protects from disclosure information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The Supreme Court's decision in *Milner v. U.S. Dep't of the Navy*, 562 U.S. 562 (2011), eliminated the distinction between "High 2" and "Low 2" exemptions. *Id.* at 570. Thus, Exemption 2 "encompasses 'only records relating to issues of employee relations and human resources.'" *Institute for Policy Studies v. CIA,* 885 F. Supp. 2d 120, 146 (D.D.C. 2012). The Criminal Division properly relies on Exemption 2 because some of the information at issue within the High Technology Investigative Unit ("HTIU") Operations Manual contains information related to work rules regarding performance and appraisal ratings and recruitment and hiring protocols and strategies. Butler Supp. Decl. ¶ 8; *see also* Criminal Division *Vaughn* Index. This information pertains to employee relations and human resources as it pertains to the selection and hiring of computer forensic specialists and practices that govern the performance appraisal

process. *Id. See e.g. Sack v. U.S. Dep't of Justice,* 138 F. Supp. 3d 10, 12 (D.D.C. 2015) (documents relating to the selection process for FBI Polygraph Examiners properly withheld under Exemption 2). This information was also created exclusively for internal use, to enable staff to effectively implement recruiting plans to hire qualified employees and interns. Butler Supp. Decl. ¶ 9. The information also reflects rules regarding the periodic assessment of an employee's job performance which pertain exclusively to internal personnel management practices. *Id.* The Criminal Division explains that disclosure of this type of internal information would thwart attracting and screening suitable candidates if these internal recruiting strategies and personnel performance measures were revealed. *Id.* ¶ 10.

In *Milner*, the Supreme Court identified three criteria for FOIA Exemption 2 to apply: (1) the information must be related to "personnel" rules and practices; (2) the information must relate "solely" to those personnel rules and practices; and (3) the information must be "internal." *Milner,* 562 U.S. at 569-570 n.4. Because each of these requirements are met here, the Criminal Division correctly applied FOIA Exemption 2. Butler Supp. Decl. ¶¶ 8-10, *see also* Criminal Division *Vaughn* Index. As this Court has previously held, "documents relating to "the selection" or "placement" of employees … would be covered by Exemption (b)(2)." *Sack,* 138 F. Supp. 3d at 12.

### B. OJP Redactions

As explained below, and as detailed in OJP's *Vaughn* Index, OJP properly relied on FOIA Exemptions 6, 7 (C), and 7(E) to withhold portions of records responsive to Plaintiff's requests.

**FOIA Exemptions 6**

OJP withheld some information pursuant to FOIA Exemption 6 with respect to Request No. 17-00209, Request No. 18-00157, and Request No. 18-00150.  OJP withheld third-party names of offenders, along with identifying numbers which can be used to identify an individual, on pages 1-2, 6-8 and 17 of the records responsive to Request No. 17-000209, and on pages 1-25 of the records responsive to Request No. 18-00157.  *See* Ex. D, OJP *Vaughn* Index.  OJP also withheld the names of some federal employees contained in an email attachment in a record responsive to Request No. 18-00150.   Potter 2nd Decl. ¶ 7, Ex. B.

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Govt. Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).

In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004).  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting

*FLRA*, 510 U.S. at 497) (alterations in original); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Importantly, "[t]he privacy interest at stake belongs to the individual, not the agency." *Amuso v. Dep't of Justice*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009); *accord Reporters Comm.*, 489 U.S. at 763-65. And "the concept of personal privacy . . . is not some limited or 'cramped notion' of that idea," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-70 (2004) (construing analogous Exemption 7(C)), but rather is grounded in "both the common law and the literal understandings of privacy [that] encompass the individual's control of information concerning his or her person."); *Reporters Comm.*, 489 U.S. at 763. "Even seemingly innocuous information can be enough to trigger the protections of Exemption 6." *Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005). An individual's privacy interest "is not limited to [personal information] of an embarrassing or intimate nature." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007); *accord Appleton v. FDA*, 451 F. Supp. 2d 129, 145 (D.D.C. 2006). Under Exemption 6, any personal privacy interest greater than *de minimis* is considered to be "substantial." *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009).

OJP correctly withheld names of individuals, along with identifying numbers specific to those individuals, against whom charges have been brought. *See e.g.* Potter 2nd Decl. ¶ 7, Ex. A; *See* Ex. D, OJP *Vaughn* Index. These individuals, given the nature of the charges, have a substantial privacy interest in not having their names disclosed; disclosure of such information could expose them to retaliation or harassment. Moreover, the disclosure of these individuals' names and identifying numbers would not serve the core purpose of FOIA – informing the public

as to the operations or activities of the government. *See* Ex. D, OJP *Vaughn* Index; *see also Lee v. Dep't of Justice,* Civ. A. No. 05-1665, 2007 WL 744731, at *2 (D.D.C. Mar. 6, 2007) ("[A]lthough the documents may contain information that has already been made public at one time, given that the information would disclose incidents of prior criminal conduct by third parties, those individuals certainly have privacy interests in keeping the information from renewed public scrutiny.").

Similarly, OJP withheld the names of some federal employees from law enforcement agencies. Potter 2nd Decl. ¶ 7, Ex. B. Release of these individuals' names would not 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *FLRA*, 510 U.S. at 497) (alterations in original). *See e.g. Bernegger v. EOUSA*, 334 F. Supp. 3d 74, 89 (D.D.C. 2018) (finding names, addresses, and telephone numbers of AUSAs, legal assistants, law enforcement officers properly withholdable as "there is reason to believe" plaintiff will harass or retaliate against those individuals – FOIA Exemption 6 and 7(C)).

The burden is on Plaintiff to establish that disclosure would sufficiently serve the public interest so as to overcome the individuals' privacy interests. *See, e.g., Carter v. Dep't of Commerce*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987); *accord Associated Press v. Dep't of Def.*, 549 F.3d 62, 66 (2d Cir. 2008); *Salas v. Off. of the Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant." (citing *Favish*, 541 U.S at 172)). Here, there is no countervailing public interest that would be served by the disclosure of the type of information withheld by OJP under FOIA Exemption 6.

In sum, because there is no countervailing public interest that can overcome the privacy interest of these individuals, OJP properly withheld this information pursuant to FOIA Exemption 6. *See Beck,* 997 F.2d at 1494 (when there is no public interest at all, the court "'need not linger over the balance; something outweighs nothing every time'") (quoting *Nat'l Ass'n of Retired. Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

**FOIA Exemptions 6 and 7(C)**

OJP withheld the names of state law enforcement personnel pursuant to FOIA Exemptions 6 and 7(C) with respect to one document associated with Request No. Request No. 18-00150. Potter 2nd Decl. ¶ 7, Ex. B.

Similarly to FOIA Exemption 6, FOIA Exemption 7(C) protects "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "Exemption 7(C) … is 'somewhat broader' than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'" *Roth v. DOJ,* 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*). Where the information in question was compiled for law enforcement purposes, courts "have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Id.* However under both Exemption 6 and 7(C), the agency must engage in a balancing test to determine whether the public interest in disclosure is outweighed by a significant private interest in non-disclosure. *See Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review,* 830 F.3d 667, 673-74 (D.C. Cir. 2016).

OJP determined that, given the nature of the work of the state law enforcement personnel, disclosure of these names could subject these individuals to harassment. Potter 2nd Decl. ¶ 7, Ex.

15

B.  Moreover, OJP concluded that releasing these individuals' names would not significantly contribute to the public's understanding of how DOJ carries out its statutory duties. *Id.* It is clear that these individuals' privacy interest outweighs the public interest in the disclosure of their identities, and accordingly this information is correctly withheld pursuant to FOIA Exemptions 6 and 7(C). *See e.g. Michael v. U.S. Dep't of Justice,* Civ. A. No. 17-0197, 2018 WL 4637358, *11 (D.D.C. Sept. 27, 2018) ("disclosure of personal information of law enforcement personnel may hinder the ability to conduct ongoing investigations, may lead to unwarranted harassment, and may otherwise cause embarrassment" constituting an invasion of privacy).

**FOIA Exemption 7(E)**

OJP applied FOIA Exemption 7(E) with respect to one request – Request No. 18-00288, to withhold some information on five pages of a seventeen-page document. *See* Ex. D, OJP *Vaughn* Index.

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).

In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not

just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'" *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Id.* (quoting *Mayer Brown*, 562 F.3d at 1194) (internal quotation marks and alterations omitted).

Pursuant to FOIA Exemption 7(E), OJP withheld criteria for evaluating law enforcement candidates and techniques for mitigating potential effects of task force work and working with sensitive images; information on case management including describing how to set investigative priorities and factors for selecting cases for investigation, documenting/conducting investigations and preserving evidence. *See* Ex. D, OJP *Vaughn* Index. OJP indicates that release of such information could undermine investigations and risk circumvention of the law. *Id.* FOIA Exemption 7(E) has been applied to information with a similar underlying purpose. *See e.g. Mosby v. U.S. Marshals Serv.,* No. 04-2083, 2005 WL 3273974, at *5 (D.D.C. Sept. 1, 2005) (finding that "administrative and operational guidelines and procedures" were properly withheld, as contents "would provide assistance to persons threatening individuals and property protected by the USMS and allow fugitives to avoid apprehension"); *Judicial Watch, Inc. v. U.S. Dep't of Commerce,* 337 F. Supp. 2d 146, 181 (D.D.C. 2004) ("Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions"). Thus, OJP correctly withheld some of the information contained in the record responsive to Request No. 18-00288 pursuant to FOIA Exemption 7(E).

**III. OJP AND THE CRIMINAL DIVISION RELEASED ALL REASONABLY SEGREGABLE PORTIONS OF THE RESPONSIVE RECORDS.**

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

In this case, where non-exempt information could be segregated from exempt information, OJP and the Criminal Division segregated and disclosed the non-exempt information from the records. Potter 2nd Decl. ¶ 12; Butler Supp. Decl. ¶ 11. OJP and the Criminal Division declarations and accompanying *Vaughn* Indices demonstrate throughout, with reasonable specificity, that all documents reviewed were processed to achieve maximum disclosure consistent with the FOIA provisions. Therefore, the Court should find that OJP and the Criminal Division have properly complied with the duty to segregate exempt from non-exempt information.

\* \* \*

## CONCLUSION

For the reasons set forth above, OJP and the Criminal Division respectfully requests that this Court grant summary judgment in its favor as to all FOIA claims against them in this case.

Dated: October 21, 2020                    Respectfully submitted,

                                                             MICHAEL R. SHERWIN
                                                             Acting United States Attorney

                                                             Daniel F. Van Horn
                                                             Chief, Civil Division
                                                            D.C. Bar #924092

                                                            By: /s/ *Kathleene Molen*
                                                            KATHLEENE MOLEN
                                                           Assistant United States Attorney
                                                           555 4th Street, N.W.
                                                           Washington, District of Columbia 20530
                                                           Telephone: (202) 803-1572
                                                           Kathleene.Molen@usdoj.gov

                                                           *Counsel for Defendants*