## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| JAMES PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-1339 (CRC) |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SUPPLEMENTAL DECLARATION OF CHRISTINA BUTLER

I, Christina Butler, declare the following to be true and correct:

1.      I am the Deputy Chief of the Freedom of Information Act ("FOIA")/Privacy Act

("PA") Unit in the Office of Enforcement Operations in the Criminal Division of the United

States Department of Justice ("Department"). I have held this position since January 23, 2017. In

my official capacity, I supervise approximately twelve employees whose mission it is to

effectively respond to requests for access to Criminal Division records. Furthermore, I am

responsible for, among other things, supervising the handling of the FOIA and PA requests

processed by the Criminal Division, FOIA/PA Unit. I am also responsible for providing litigation

support and assistance to Assistant United States Attorneys and Civil Division Trial Attorneys

who represent the Criminal Division in lawsuits filed in federal court under the FOIA and/or the

PA stemming from requests for Criminal Division records.

2.      The FOIA/PA Unit is responsible for processing FOIA requests seeking records

from within the Criminal Division.[1] The FOIA/PA Unit determines whether the Criminal

---

[1] The Criminal Division is comprised of seventeen Sections: the Office of the Assistant Attorney General, the Appellate Section, the Computer Crime and Intellectual Property Section, the Capital Case Section, the Child

Division maintains records responsive to FOIA/PA requests, and if so, whether they can be

released in accordance with the FOIA. In processing such requests, the FOIA/PA Unit consults

with personnel in the Criminal Division sections where potentially responsive records may be

maintained and, when appropriate, with other components within the Department of Justice, as

well as with other Executive Branch agencies.

3.      Due to the nature of my official duties, I am familiar with the procedures followed

by the Criminal Division in responding to requests for information from its files pursuant to the

provisions of the FOIA, 5 U.S.C. § 552, and the PA, 5 U.S.C. § 552a. Specifically, I am familiar

with the FOIA request submitted by Plaintiff, at issue in this litigation, and the Criminal

Division's search and response to that request.

4.      I make the statements herein on the basis of personal knowledge, as well as on

information provided to me by others within the Criminal Division with knowledge of the search

and documents at issue in this case and on information acquired by me in the course of

performing my official duties in the FOIA/PA Unit.

5.      In Amanda Marchand Jones's declaration of September 20, 2019, she described

this Office's handling of Plaintiffs October 31, 2017, FOIA request, including its search, final

response, and a description of documents and withheld material. See Declaration of Amanda

Marchand Jones dated September 20, 2019 ("Jones Decl.") (ECF No. 89-1). My declaration

dated February 21, 2020, responded to certain issues raised in Plaintiff's Cross-Motion for

Partial Summary Judgement on Count 3 and Count 4, filed on December 26, 2019, by detailing

---

Exploitation and Obscenity Section, the Fraud Section, the Human Rights and Special Prosecutions Section, the International Criminal Investigative Training Assistance Program, the Money Laundering and Asset Recovery Section, the Narcotic and Dangerous Drug Section, the Organized Crime and Gang Section, the Office of Enforcement Operations, the Office of International Affairs, the Office of Overseas Prosecutorial Development, Assistance and Training, the Office of Policy and Legislation, Office of Administration, and the Public Integrity Section.

the Criminal Division's search parameters. See Declaration of Christina Butler dated February

21, 2020 ("Butler Decl.") (ECF No. 83). This declaration is being filed pursuant to the Court's

Order and Memorandum and Opinion, both filed on July 14, 2020, see Dkt. Doc. Nos. 91 and 92

("Opinion and Order"), requiring the Criminal Division to clarify its Exemption 2 withholdings,

and supplements and incorporates by reference Amanda Marchand Jones's declaration of

September 20, 2019 and my February 21, 2020, declaration.

6.      Attached to this declaration is a Vaughn Index containing detailed descriptions of

partially withheld records and records withheld in full. This Vaughn Index includes the following

information for each document (where applicable): Section, Subsection, Exemption(s), Number

of Pages, Determination (released in part or withheld in full), Description of Withheld Material.

(A copy of the Vaughn Index is attached hereto as Exhibit A.)

7.      FOIA Exemption 2 was only applied to portions of Document No. 5, *High

Technology Investigative Unit* (*HTIU*) *Operations Manual (including Appendices) (166 pages).*

See Declaration of Amanda Marchand Jones dated September 20, 2019, ¶33a-f ("Jones Decl.")

(ECF No. 89-1). The Criminal Division maintains its position on Exemption 2 as to the portions

of Document No. 5 described in the Vaughn. The other portions of Document No. 5, where

Exemption 2 was applied, was in conjunction with the other exemptions that were affirmed by

the Court. See Opinion and Order.

8.      The information within Document No. 5 described in the Vaughn is human

resource information. The information protected is contained within the "Personnel" section of

the HTIU Operations Manual, which outlines certain duties and practices about employees. The

portion of information protected relate to work rules regarding performance and appraisal ratings

and recruitment and hiring protocols and strategies. The information is employee relations

information since it pertains to the selection and hiring of computer forensic specialists and practices that govern the performance appraisal process.

9.      This information was created exclusively for internal use. The information enables staff to know how to effectively implement recruiting plans to hire qualified employees and interns. Release would reveal a step in the process of selecting full-time and part-time employees. The information also reflects rules regarding the periodic assessment of an employee's job performance. Information reflecting rules regarding the evaluation of employees work performance pertain exclusively to internal personal management practices.

10.     It is reasonably foreseeable that disclosure of this type of internal personnel information would harm the interests protected by this provision as it would thwart attracting and screening suitable candidates if internal recruiting strategies and personnel performance measures were revealed.

11.     I conducted a detailed line-by-line review and no non-exempt information was withheld pursuant to this exemption and thus further segregation was not possible.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Christina Butler

Executed this 21 day of October 2020