UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES PRICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT | ) |
| OF JUSTICE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 18-1339 (CRC)

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
AS TO FEDERAL RECORDS ACT AND APA CLAIMS**

This case involves ten Freedom of Information Act ("FOIA") requests submitted by

Plaintiff to Defendant United States Department of Justice (the "Department"), more specifically

the Criminal Division and the Office of Justice Programs ("Justice Programs").[1]  In conjunction

with his FOIA claims, Plaintiff alleges two claims brought under the Administrative Procedure

Act ("APA") and the Federal Records Act against the Department and the National Archives and

Records Administration ("NARA").  As explained herein, in the attached Statement of Facts, the

declarations of Jeanette Plante Fitzpatrick ("Fitzpatrick Decl.") and Jeffrey Gersh ("Gersh Decl."),

Defendants are entitled to judgment as a matter of law with respect to Plaintiff's FRA claims.

**FACTUAL AND PROCEDURAL BACKGROUND**

This lawsuit began as a FOIA case involving ten FOIA requests submitted by Plaintiff to

the Department.  The requests in question were processed by two Department components—the

Criminal Division and Justice Programs.  The suit was initiated on November 29, 2017, in the

---

[1]     Defendants addressed the remaining FOIA claims on October 21, 2020.  *See* ECF No. 98.

District for the Southern District of Florida. *See* Compl, ECF No. 1. The case was subsequently

transferred to this Court. *See* Order (ECF No. 26). On December 14, 2018, this Court granted

Plaintiff leave to amend and accepted for filing his amended complaint. *See* Minute Order of

December 14, 2018; Am. Compl. (ECF No. 47). Plaintiff's amended complaint included

additional claims under the APA and the Federal Records Act and additional defendants—the

Attorney General and Archivist. Plaintiff then filed a motion for a temporary restraining order and

a motion for a preliminary injunction, which was denied by the Court on June 19, 2019. *See* ECF

Nos. 52, 66.

In its Minute Order of July 25, 2019, the Court stayed resolution of Plaintiff's APA and

Federal Records Act claims until the resolution of the underlying FOIA dispute. The parties

submitted a first round of briefings with respect to the Plaintiff's FOIA claims. On July 14, 2020,

this Court denied in part the Department's Motion for Summary Judgment with respect to the

adequacy of the search for Justice Programs' Requests Nos. 18-00059, 18-00156, 18-00157,

18-00136, 18-00150, and 18-00288. *See* ECF No. 91. This Court also denied in part the

Department's Motion for Summary Judgment with respect to all of Justice Programs' redactions,

and the Criminal Division's redactions made pursuant to FOIA Exemption 2. *Id.* The Court

granted in part the Department's Motion for Partial Summary Judgment with respect to the

adequacy of the searches for Justice Programs' Requests Nos. 17-00209, 18-00260, and 18-00294;

the adequacy of the search of the Criminal Division's request and the Criminal Division's

withholdings made pursuant to FOIA Exemptions 6, 7(C), 7(E), and 7(F). *Id.* The Court also

indicated that resolution of Plaintiff's APA and Federal Records Act claims was no longer stayed

and ordered the Government to file a combined motion for summary judgment as those claims and

a renewed motion for partial summary judgment as to Plaintiff's FOIA claims.

Having requested additional time to address Plaintiff's APA and Federal Records Act claims, Defendants filed their renewed motion for summary judgment with respect to Plaintiff's FOIA claims on October 21, 2020.  *See* Mot. for Summ. J. (ECF No. 98).

Defendants address now Counts 1 and 2 of Plaintiff's amended complaint.[2]  Count 1 alleges that the Attorney General "failed to 'establish and maintain an active, continuing program for the economical and efficient management of the records of the agency' and failed to prevent 'the removal of records from the legal custody' of the agency."  *See* Am. Compl. (ECF No. 47) ¶ 44. And Count 2 alleges that the Archivist of the United States violated his duty "by failing to initiate legal action through the Attorney General to recover the unlawfully alienated or removed federal records, and to notify Congress of such actions."  *Id.* ¶ 53.

## RELEVANT FACTS

Between May 2017 and May 2018, Plaintiff submitted nine FOIA requests to Justice Programs and one FOIA request to the Criminal Division.  *See* Def's Mot. for Summ. J. Exs. A, B (ECF Nos. 74-3, 74-5).  On August 9, 2018, following Justice Programs' final determination with respect to some of his FOIA requests,[3] Plaintiff wrote a letter to the Attorney General and the

---

[2]     In its June 19, 2019, Opinion the Court indicated that Plaintiff's complaint "alleges two judicially reviewable FRA-via-APA claims."  Mem. Op. (ECF No. 67) at 9.  In Count 4, Plaintiff alleges that the Department "violated that Acts by and through the authorization, implementation, and on-going use of a private recordkeeping system, known as the Child Protection System . . . by the National ICAC-TF Program"  *See* Am. Compl. (ECF No. 47) ¶ 78.  Plaintiff asserts that the Department "authorized, funded, and implemented the use of an external recordkeeping system as a deliberate means to effect a policy and practice of the alienation, removal, and or destruction of federal records" and demands that the Department stop using this recordkeeping system.  *Id.* ¶¶ 80, 83.  The Court explained that Plaintiff's Count 4 is "akin to "suing directly to enjoin agency actions in contravention of agency guidelines," and *Armstrong* made clear that such a claim is unavailable to private litigants."  *Armstrong v. Bush,* 924 F.2d 282, 294 (D.C. Cir. 1991).

[3]     Justice Programs provided final determinations with respect to FOIA Request No. 18-00294 on September 28, 2018; with respect to FOIA Request No. 18-00288 on August 3,

Archivist of the United States, serving as a notice of Defendants' violation of the Federal Records Act, indicating that "during the course of the FOIA process and the subsequent litigation, that Justice Programs admitted through counsel, that it "does not routinely collect" the records required under the FRA statutes.  *See* Pl's Mot. for Extension of Time (ECF No. 35) at Ex. D.  Thus, according to Plaintiff, Justice Programs' inability to comply with FOIA was based on its predicate failure to comply with the FRA."  *Id.*

As Plaintiff noted in the second and fifth paragraphs of his Motion for an Extension of time to File Leave to Amend Complaint (ECF No. 35), his August 9th letter was triggered by Defendant's Status Report dated July 30, 2018, wherein Justice Programs indicated that the Office of Juvenile Justice is a grant-making entity and not an operational Department agency.  *See* Def.'s Resp. to Pl's Status Report; ECF No. 33.  And more specifically, the Office of Juvenile Justice "*does not routinely collect* case specific details that are being sought by Plaintiff, including Secure Hash Algorithm version 1 (SHA-1), MD5 Hash values, or images found by law enforcement that are forwarded to the Child Victim Identification Program . . . and the National Center for Missing & Exploited Children[.]"  *Id.*  (emphasis added).

On October 1, 2018, Plaintiff filed his motion to amend his complaint to include the Federal Records Act claims described above; Plaintiff's motion was subsequently granted.  ECF No. 47.

## STATUTORY BACKGROUND

The Federal Records Act is "a collection of statutes governing the creation, management, and disposal of records by federal agencies."  *Pub. Citizen v. Carlin,* 184 F.3d 900, 902 (D.C. Cir. 1999).  Under the Federal Records Act, each agency head is required to "establish and maintain

---

2018; and with respect to FOIA Request No. 18-00260 on September 17, 2018.  *See* Def's Mot. for Summ. J. Ex. B (ECF No. 74-3).

an active, continuing program for the economical and efficient management of the records of the agency." 44 U.S.C. § 3102.  The Federal Records Act directs that an agency head "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." *Id.* § 3101.  The Federal Records Act further provides that agency heads must "establish safeguards against the removal or loss of records the head of such agency determines to be necessary and required by regulations of the Archivist."  *Id.* § 3105.

The Federal Records Act contains no private right of action.  *Judicial Watch, Inc. v. Kerry,* 844 F.3d 952, 954 (D.C. Cir. 2016).  Indeed, the D.C. Circuit has emphasized that the Federal Records Act "understandably leaves the details of records management to the discretion of individual agency heads."  *Armstrong v. Bush,* 924 F.2d 282, 293 (D.C. Cir. 1991).  Moreover, "agency personnel, not the court, will actually decide whether specific documents . . . constitute 'records' under [an agency's recordkeeping] guidelines."  *Id.* at 293-294.

When it comes to allegations of improper removal or destruction of federal records, the Federal Records Act "establishes only one remedy," which is administrative in nature: "the agency head, in conjunction with the Archivist, is required to request the Attorney General to initiate an action to recover records unlawfully removed from the agency." *Id.* at 294 (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 148 (1980)).  In particular, pursuant to 44 U.S.C. § 3106(a), "[t]he head of each Federal agency shall notify the Archivist" if the agency head becomes aware of the unlawful removal or destruction of records, "and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records the

head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency." 44 U.S.C. § 3106(a).

The D.C. Circuit has recognized that, in light of the broad discretion that the Federal Records Act grants agencies in regard to identifying and handling their own records, and the administrative mechanism already in place to ensure agencies' Federal Records Act compliance, the range of permissible APA claims is quite limited. Specifically, the D.C. Circuit held that, although a court could review the "adequacy" of an agency's "recordkeeping guidelines and directives," in regard to their "conformity . . . with statutory directives," a challenge to an agency's compliance with the agency's own recordkeeping guidelines was impermissible. *Armstrong,* 924 F.2d at 294. The second type of permissible Federal Records Act claim is "judicial review of the agency head's or Archivist's refusal to seek the initiation of an enforcement action by the Attorney General" under 44 U.S.C. § 3106. *Armstrong,* 924 F.2d at 295.

## LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In the APA context, "the summary judgment standard is different, because of the limited role of a court in reviewing an administrative record." *Davidson v. Dep't of State,* 113 F. Supp.

3d 183, 189 (D.D.C. 2015) (internal quotation omitted).  When assessing a summary judgment

motion in an APA case, "the district judge site as an appellate tribunal." *Am. Bioscience, Inc. v.*

*Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  "In such a case, summary judgment merely

serves as the mechanism for deciding, as a matter of law, whether the agency action is supported

by the administrative record and otherwise consistent with the APA standard of review." *Davidson*,

113 F. Supp. 3d at 189 (internal quotation omitted).

## ARGUMENT

**I.     The Department of Justice has a high performing Records and Information Management Program in accordance with 44 U.S.C. § 3102.**

Contrary to Plaintiff's allegation, the Department has a high performing Records and

information Management Program in accordance with 44 U.S.C. § 3102.  Plaintiff alleges that the

Department has failed to "establish and maintain an active, continuing program for the economical

and efficient management of the records of the agency."  Am. Compl. ¶ 44. This is simply wrong.

In 2014, the Department issued Department Order No. 0801, "Records and Information

Management Program" (amended in 2020) which memorialized the Records and Information

Management Program structure and responsibilities and established Department level policy for

meeting the requirements of the Federal Records Act.  Fitzpatrick Decl. ¶ 4.  The Department

established the programmatic framework for the Department's Records Program that is comprised

of five program elements, including records management training.  *Id.*  One of those elements is

that all components establish and manage a component level records program that includes training

for all staff on the concepts of records management, as well as responsibilities for managing

component records.  *Id.* ¶ 5.  In addition, components are required to provide additional role based

training on records to all staff that may have intersecting responsibilities for the records programs

such as records staff, information technology staff, and component managers.  *Id.*  Furthermore,

each component has a Records Manager or Records Officer, depending on the component's size and complexity, who will manage the component level records program in accordance with the Department's policies and statutory and regulatory requirements. *Id.* ¶ 6. These requirements have been in place for many years. *Id.* ¶ 7.

The Department annually reports to NARA through the Senior Agency Official for Records Management Report, the Email Management Report,[4] and the Records and Information Management Self-Assessment (the "Self-Assessment").[5] *Id.* ¶ 7. The Self-Assessment is an overarching Records Program Evaluation that NARA scores based on its measurement of records programmatic success. *Id.*

For the years 2017, 2018, and 2019, at the Department level, which includes department level policies, processes and requirements for all components, Self-Assessment scores were 95, 97, and 98 respectively out of a total of 100. *Id.* ¶ 8. This score puts the Department as a whole at the low-risk program category. *Id.* For those same years, at the component level, Justice Programs scored 89, 95, and 96 respectively out of a total of 100. *Id.* The score of 89 is the top of the moderate risk category, while the scores of 95 and 96 in subsequent years put Justice Programs at low risk by NARA's assessment criteria. *Id.*

Based on the above, it is clear that the Department has maintained an active, continuing program for the efficient management of its records, and therefore the Court should not entertain Plaintiff's unsupported allegation that the Department has failed to do so.

---

4       *See* https://www.archives.gov/records-mgmt/resources/email-mgmt-reports

5       *See* https://www.archives.gov/records-mgmt/resources/self-assessment.html

**II.      Because Plaintiff has not identified records that fall under FRA, there can be no FRA violation.**

Justice Programs provides federal leadership, grants, training, technical assistance and other resources to improve the nation's capacity to prevent and reduce crime, assist victims and enhance the rule of law by strengthening the criminal and juvenile justice systems.[6] Its six program offices support state and local crime-fighting efforts, fund thousands of victim service programs, help communities manage sex offenders, address the needs of youth in the system and children in danger, and provide vital research and data.

One of Justice Programs' program offices is the Office of Juvenile Justice.  Gersh Decl. ¶ 1.  One of the grant programs within the Office of Juvenile Justice is the is the Internet Crimes Against Children Task Force (the "Task Force") Program.  *Id.* ¶ 2.  The Task Force Program is not a federal agency, it is a grant award program administered by the Office of Juvenile Justice that helps state and local law enforcement agencies develop an effective response to technology-facilitated child sexual exploitation and Internet crimes against children.  *Id.* ¶ 6.  The Office of Juvenile Justice makes grant awards to state-wide and regional task forces, but the Office of Juvenile Justice is not itself a law enforcement agency.  *Id.* ¶ 4.  In other words, the Office of Juvenile Justice does not investigate or prosecute cases under the Task Force Program, nor does it create or receive confidential prosecution or investigation records concerning Task Force cases. *Id.* ¶ 6.  Furthermore, the Office of Juvenile Justice does not make or receive records that are generated, collected, stored, or preserved by investigation software, such as Child Protection System, used by task forces.  *Id.* ¶ 7.

---

6          *See* https://www.ojp.gov/about

Task forces, which are not federal entities,[7] use software offered by third parties (such as the Child Rescue Coalition's Child Protection System software) to investigate individuals who allegedly download and share illegal material on the Internet. *Id.* ¶ 4. With the exception of periodic state-by-state reports (including U.S. territories) that solely provide a numerical total of the number of investigative leads arising in the various jurisdictions covered by the state-wide and regional task forces, the Office of Juvenile Justice does not make or receive records that are generated, collected, stored, or preserved by investigation software. *Id.* ¶ 7.

As noted previously, Plaintiff submitted nine FOIA requests to Justice Programs. When Plaintiff did not receive the records he anticipated, or hoped to receive from Justice Programs, and following one Defendant's status report wherein Defendant indicated that the Office of Juvenile Justice did not collect Secure Hash Algorithm version 1 data (ECF No. 33), Plaintiff came to the conclusion that there must be a Federal Records Act violation. However, based on Justice Programs and the Office of Juvenile Justice's mission statement, and given that Justice Programs does not investigate or prosecute task force cases, the fact that Justice Programs and the Office of Juvenile Justice do not have "emails, a collaborative message exchange, files, administrative subpoena records, 3rd-party database records, IP Address records, various 'hash value' e.g., SHA-1 values, MD-5 values, etc., and other historical records" related to thousands of criminal convictions (Am. Compl. ¶ 23 (ECF No. 47)) is not evidence of an Federal Records Act violation within the Department. Based on Justice Programs' mission, there would be no reason for Justice Programs and the Office of Juvenile Justice to maintain records related to investigations and prosecutions from the task force cases. Accordingly, the lack of such records within Justice

---

[7]     *See* https://www.icactaskforce.org/Pages/ContactsTaskForce.aspx

10

Programs and the Office of Juvenile Justice is not sufficient to establish a Federal Records Act violation.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court grant summary judgment in their favor as to all Federal Records Act and APA claims against them in this case.


Dated: December 21, 2020                    Respectfully submitted,

                                             MICHAEL R. SHERWIN
                                             Acting United States Attorney

                                             Daniel F. Van Horn, D.C. Bar #924092
                                             Chief, Civil Division

                                             By:  /s/ *Kathleene Molen*
                                             KATHLEENE MOLEN
                                             Assistant United States Attorney
                                             555 4th Street, N.W.
                                             Washington, District of Columbia 20530
                                             Telephone: (202) 803-1572
                                             Kathleene.Molen@usdoj.gov

                                             *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 21, 2020, the foregoing was caused to be served

on Plaintiff via postage prepaid first class mail to:

James Price
Reg. # 98922-004
Miami
Federal Correctional Institution
P.O. Box 779800
Miami, FL 33177

By: /s/ *Kathleene Molen*
KATHLEENE MOLEN
Assistant United States Attorney